

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00474-CR

_____

ROSALINO CASTRO, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1554677R

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Justice Gabriel
Dissenting and Concurring Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Rosalino Castro appeals from his convictions of and concurrent sentences for unauthorized use of a motor vehicle and for engaging in organized criminal activity (EOCA). *See* Tex. Penal Code Ann. §§ 31.03, 71.02(a)(1); *see also id.* § 3.03(a). In three points, he contends that the trial court erred by failing to sever the two counts into separate trials, that the evidence was insufficient to show that he was acting as a gang member during the commission of unauthorized use of a motor vehicle, and that his trial counsel was constitutionally ineffective. We conclude that Castro was not harmed by the consolidated trial, that the evidence was sufficient to support his conviction for EOCA, and that the record is inadequate to address his ineffective-assistance claim on direct appeal. Thus, we affirm the trial court's judgments.

## I. SUFFICIENCY

In his second point, Castro asserts that the evidence was insufficient to support his EOCA conviction.

### A. FACTS

Early on August 9, 2017, Charles Toole awoke to find that his white truck had been stolen from his driveway sometime after he had arrived home from work the night before. Toole, who lived in far north Fort Worth, reported his truck stolen at 7:00 a.m. on August 9. At 9:15 a.m., Officer Tom Gierling saw a white truck parked in front of a business in east Fort Worth that was being investigated for suspected

illegal activity connected to a criminal street gang—the East Side Latin Kings. The business routinely and knowingly bought construction supplies—windows, plywood decking, roofing materials, and the like—which had been stolen from construction sites. And the business was located in the East Side Latin Kings' territory.

Gierling noticed the truck because "the back end was pretty low" with "a 3 foot stack of the orange, painted-edge plywood sitting in the back of it." Gierling checked the license-plate number after he drove by the truck and discovered that the truck had been reported stolen that same day. Officer San Juan Leon, an undercover officer who was at the business, saw a "Hispanic male" move the truck and he notified Gierling. Gierling stopped the truck, which was driven by Castro. The steering-wheel column on the truck was broken, which is a common way to start a vehicle without having the key.

After Castro was arrested for driving the stolen truck, Gierling noticed that the plywood found in the truck was roof decking with a "radiant barrier foil lining," which is more expensive than other types of roof decking. Gierling discovered that at approximately 3:00 a.m. on August 9, security video of a construction site in far north Fort Worth showed a truck similar to Toole's truck "back[] up to an area where they had about 60 sheets of this decking material come up missing [later that] morning." The theft of Toole's truck probably would have been committed by multiple people: "[M]ore than likely someone drove [Castro] to [far north Fort Worth] where he allegedly . . . stole the vehicle or someone stole the vehicle from this location here.

3

And it's pretty much a very short distance to the construction site where the . . . construction materials were stolen." The theft of the roofing materials also would have required more than one person.

Leon contacted the police department's gang unit because Castro's tattoos—one of which was a crown—seemed to identify him as a member of the Latin Kings. Officer Christopher Wells with that unit interviewed Castro at the jail and determined that his tattoos were "consistent with the membership in the Latin Kings," which Wells knew to be a criminal street gang. Castro admitted to Wells that he was a member of that gang. The gang unit's database showed that Castro had been a confirmed member since 2004.

Castro was indicted with unauthorized use of a motor vehicle and with EOCA. At trial, Wells testified regarding gang membership, gang territories, the criteria used to identify members, and how law enforcement tracks members. According to Wells, the East Side Latin Kings in east Fort Worth has approximately 100 confirmed members; across the nation, the Latin Kings number in the "many, many thousands." Latin Kings can be identified by particular tattoos and symbols: a five-point crown, a five-point star, a male lion head, the number five, and "King Love." Wells also explained that gangs make money "from their criminal activity," such as drug sales, robberies, burglaries, theft, or prostitution. The Latin Kings have been involved in all of these criminal acts. Based on his eighteen years' experience in the gang unit, Wells

4

opined that Castro was acting as a member of the Latin Kings when he committed unauthorized use of a motor vehicle.

## B. STANDARD AND SCOPE OF REVIEW

On appeal, Castro asserts there was no evidence that he committed unauthorized use of a motor vehicle "as a member of a criminal street gang," which was an essential element of EOCA as alleged in the indictment and in the jury charge.[1] Tex. Penal Code Ann. § 71.02(a); *Zuniga v. State*, 551 S.W.3d 729, 734–36 (Tex. Crim. App. 2018). In our sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard is the same for direct- and circumstantial-evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). We must defer to the fact-finder's exclusive responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inference from basic facts to ultimate facts. *Zuniga*, 551 S.W.3d at 732–33. Although a fact-finder may not speculate, it may draw reasonable inferences from the supported facts. *Id.* at 733.

---

[1]Castro does not challenge the sufficiency of the evidence to support his conviction for unauthorized use of a motor vehicle.

5

## C. APPLICATION

Castro focuses on his allegations that there was no direct evidence he was an active member of the Latin Kings, he stole Toole's truck, or he used the truck without authorization "in furtherance of a gang." Castro was indicted with the commission of unauthorized use of a motor vehicle as a member of a criminal street gang.

To be sufficient to prove that Castro committed unauthorized use of a motor vehicle as a member of a criminal street gang, "the evidence need only . . . show some nexus or relationship between the commission of the underlying offense and the defendant's gang membership." *Id.* at 739; *see also Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) (holding evidence sufficient to prove EOCA if evidence establishes commission of predicate offense as a member of a criminal street gang). The State was not required to prove that Castro had the "intent to establish, maintain, or participate in a combination or in the profits of a criminal street gang."[2] Tex. Penal Code Ann. § 71.02(a); *see Zuniga*, 551 S.W.3d at 735. Nor did the State have to prove Castro's "particular motivation for committing" the predicate offense. *See Zuniga*, 551 S.W.3d at 739.

Instead, the State was required to prove that Castro committed unauthorized use of a motor vehicle while "acting pursuant to his role or capacity" as a member of

---

[2]Indeed, after *Zuniga* was decided, the trial court struck as surplusage the indictment's intent language, allowing the State to rely solely on the "as a member of a criminal street gang" means of EOCA commission.

a criminal street gang—"three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." Tex. Penal Code Ann. § 71.01(d); *Zuniga*, 551 S.W.3d at 739. And proof that Castro was acting in his role or capacity as a member of a criminal street gang does not mean that the evidence must show that more than one person committed the predicate offense: "Rather, a person may be convicted of engaging in organized criminal activity by either individually committing the offense **or** by conspiring with others to commit the offense." *Hunsaker v. State*, No. 02-16-00331-CR, 2017 WL 4053897, at *3 (Tex. App.—Fort Worth Sept. 14, 2017, pet. ref'd) (per curiam) (mem. op., not designated for publication) (emphasis added).

Here, the evidence showed that Castro admitted he was a member of the East Side Latin Kings and had the tattoos to prove it. Castro had been a confirmed member of the Latin Kings since 2004, and this lengthy history of gang membership "show[ed] a continuation of a lifestyle . . . or of an affiliation." Wells checked Castro's Facebook account and found many recent pictures and posts that reinforced Castro's current membership in the East Side Latin Kings. Wells also testified that the East Side Latin Kings were known to commit crimes to satiate its "love of money . . . at any cost," including stealing cars to use in other crimes. The business where Castro was seen with Toole's truck, which was loaded with stolen roofing materials, was known to deal in stolen construction materials and was connected to the East Side

7

Latin Kings. The roofing materials were stolen from a construction site near Toole's home, both of which were outside of the East Side Latin Kings' territory, and were transported to the East Side Latin Kings' territory for sale, which was a common gang practice. Wells informed the jury that if a gang member commits a crime, it brings prestige and notoriety to that gang; thus, gang members are "always acting as a member of the gang, even if they may be acting singular[ly]." *See, e.g.*, *id.* (recognizing EOCA conviction may be authorized by defendant's sole commission of predicate offense). And based on Wells's extensive experience with criminal street gangs in Fort Worth and on the facts presented, Wells opined that Castro committed unauthorized use of a motor vehicle while acting in the role, capacity, or function of a member of a criminal street gang:

> That's my opinion because the consistencies of everything we have. The type of crime. I know the Latin Kings engage in this type of crime. Where . . . they were trying to sell the [roofing] material at, within their home turf. All these things are indicative to me of a Latin King committing a theft in another part of the city, driving it back to their home territory to unload it.

We conclude the evidence circumstantially showed "some nexus or relationship between the commission of the underlying offense and [Castro's] gang membership"—Castro committed the underlying offense while "acting pursuant to his role or capacity as a gang member"—and that the East Side Latin Kings is comprised of three or more persons, having a common identifying sign or symbol, who continuously or regularly associate in the commission of criminal activities.

8

*Zuniga*, 551 S.W.3d at 739. This is all the State was required to prove; thus, the evidence was sufficient to allow the jury to draw reasonable inferences supporting its finding that Castro committed EOCA. *See, e.g.*, *id.* at 738–39; *Villa*, 514 S.W.3d at 232–33; *Hunsaker*, 2017 WL 4053897, at *3–4.

Although the dissent's arguments are cogent, we believe that to require proof of what the dissent contends is missing here would impermissibly require the State to prove Castro's particular motivation or that Castro had the statutory "intent to establish, maintain, or participate in a combination or in the profits of a combination," both of which stray outside the hypothetically correct jury charge applicable here and, thus, outside of our sufficiency review.[3] Tex. Penal Code Ann. § 71.02(a); *see Zuniga*, 551 S.W.3d at 735–39. Such motivation or intent is not part of the State's case. *See Zuniga*, 551 S.W.3d at 739. Wells testified to his "logical conclusion" based on the facts presented that Castro committed unauthorized use of a motor vehicle as a member of and to promote the East Side Latin Kings, which is

---

[3]Specifically, the dissent points to the lack of "evidence of the involvement of other East Side Latin Kings in the underlying crime of unauthorized use of a motor vehicle" and describes the State's proffered evidence as a proving only a speculative "theory" that Castro was acting as a member of a criminal street gang. Many of the cases relied on by the dissent were decided before the Court of Criminal Appeals clearly held in *Zuniga* that proof of a defendant's particular motivation—specific intent—is not an element of the State's case if the defendant is charged only with commission while acting pursuant to his role or capacity as a member of a criminal street gang. As such, those cases discussing the sufficiency of the evidence regarding an EOCA defendant's intent, when intent is not included as a means of commission in the indictment, are inapplicable.

9

made up of over 100 members who continuously or regularly associate in the commission of criminal activities and which has common identifying signs. This evidence, even though largely circumstantial, was not impermissibly speculative and allowed the jury to draw reasonable inferences supporting its finding that Castro was guilty of EOCA. We may not second-guess these inferences and credibility determinations.

We overrule point two.

## II. SEVERANCE

In his first point, Castro contends that the trial court erred by denying him the right to a severance and that he was harmed by the offenses being tried together. Relevant to this point is the fact that on September 19, 2017, Castro originally was indicted for unauthorized use of a motor vehicle in cause number 1509186D. On July 25, 2018, Castro was indicted in cause number 1554677R for the same unauthorized use of a motor vehicle alleged in the 1509186D indictment and for EOCA by committing, "as a member of a criminal street gang," the offense of unauthorized use of a motor vehicle. Tex. Penal Code Ann. § 71.02(a).

On the first day of trial (October 16, 2018) before jury selection, Castro filed a combined motion to quash the indictment and an application for habeas corpus relief. In the motion, he asserted that the indictment should be quashed because of his "right to a separate trial for each offense" and that he was entitled to habeas corpus relief because the indictment violated his "right to be free from multiple trials for the

10

same offense." He further "assert[ed] his right to have a separate trial for each charged offense" in the indictment. During the pretrial hearing held that same day, Castro asserted that the State should be required to "make an election." Castro did not specifically ask for a severance at the hearing and focused on his request that the indictment be quashed on the basis of double jeopardy because the State had not dismissed the indictment in cause number 1509186D.[4] The trial court denied Castro's motion to quash the indictment, rejecting Castro's double-jeopardy argument and his additional assertion that the facts were insufficient to indict Castro for EOCA as a member of a criminal street gang.

If a defendant timely requests a severance of multiple offenses sought to be tried in one trial because the offenses arose from the same criminal episode, the defendant has an absolute right to separate trials. *See id.* § 3.04(a); *Llamas v. State*, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000); *Coleman v. State*, 788 S.W.2d 369, 371 (Tex. Crim. App. 1990). *See generally Thornton v. State*, 986 S.W.2d 615, 617 (Tex. Crim. App. 1999) (per curiam) (holding severance request must be raised before jeopardy attaches to be considered timely). The State argues that Castro did not preserve his severance argument for our review because he did not "specially advise" the trial court at the hearing that he was requesting a severance. *See Martinez v. State*, No. 04-

---

[4]The trial court dismissed the indictment in cause number 1509186D on October 23, 2018—after Castro was convicted of both counts in cause number 1554677R.

11

01-00291-CR, 2002 WL 31423881, at *1 (Tex. App.—San Antonio Oct. 30, 2002, pet. ref'd) (not designated for publication); *Rodriguez v. State*, 90 S.W.3d 340, 357 (Tex. App.—El Paso 2001, pet. ref'd). Under the facts of this case, preservation is a close call. Castro did not clearly request a severance at the hearing as he arguably had in his pretrial motion, but he did assert that the State should "make an election." We will assume without deciding, for purposes of this appeal only, that the severance issue was sufficiently preserved in the trial court. *See generally* Tex. R. App. P. 33.1(a)(1)(A) (providing that specific grounds may be preserved if "apparent from the context"), 33.1(a)(2) (providing implicit ruling may preserve error).

Assuming Castro appropriately raised his right to separate trials, we must determine if the error adversely affected Castro's substantial rights by looking at the entire record. *See Werner v. State*, 412 S.W.3d 542, 547 (Tex. Crim. App. 2013). If the error did not adversely affect Castro, we disregard any error occasioned by the severance denial. *See id.* A failure to sever will be considered harmless if there is an "overlap of evidence" between the two charges tried together; but harm will result if there is no overlap of evidence. *Id.* at 548–59. In other words, a defendant's substantial rights are adversely affected if the State tries an "apple[]" offense with an unrelated "orange[]." *Id.* at 548.

Here, there was a substantial overlap of evidence regarding the two offenses. Indeed, the commission of unauthorized use of a motor vehicle was an essential element of the State's EOCA case. *See* Tex. Penal Code Ann. § 71.02(a)(1). Thus,

12

evidence regarding the unauthorized use of Toole's truck would have been admissible at a separate trial for EOCA. And the opposite is true as well—evidence of EOCA would be admissible at a separate trial for unauthorized use of a motor vehicle. *See Werner*, 412 S.W.3d at 550; *Torres v. State*, No. 01-13-00300-CR, 2014 WL 4374119, at *3 (Tex. App.—Houston [1st Dist.] Sept. 4, 2014, pet. ref'd) (mem. op., not designated for publication). *See generally* Tex. Penal Code Ann. §§ 3.01(1), 3.02(a) (allowing consolidated trial for all offenses arising out of the same criminal episode, which is defined as the commission of two or more offenses constituting a common scheme or plan). Under these circumstances, we conclude that the consolidated trial did not try apple and orange offenses but tried apples with apples; thus, the denial of a severance did not adversely affect Castro's substantial rights. *See, e.g.*, *Werner*, 412 S.W.3d at 546–50, 552; *Nkalari v. State*, No. 05-15-00943-CR, 2017 WL 655924, at *2–3 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op., not designated for publication); *Torres*, 2014 WL 4374119, at *2–3. We overrule point one.

### III. ASSISTANCE OF COUNSEL

In his third point, Castro refers to several actions and inactions by trial counsel and argues that they reveal counsel's ineffective assistance, entitling Castro to a new trial. The specified actions and inactions are counsel's late arrival for the second day of trial, failure to test Wells's qualifications and methodology, failure to object to Wells's custodial interrogation in which Castro admitted his gang affiliation, statement "we really have nothing that we want to put on" made before resting Castro's case-in-

13

chief, failure to ensure that a colloquy with Castro about his right to testify appeared in the record, failure to review the entirety of the State's file or Castro's criminal records, failure to object to the admission of inadmissible portions of Castro's criminal records, and failure to properly seek a severance.

We are to defer to counsel's strategic decisions and may consider them to be constitutionally ineffective only if his actions were deficient and if the result of the trial would have, in reasonable probability, been different but for counsel's actions. *See Strickland v. Washington*, 466 U.S. 668, 687, 689, 694 (1984). Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for taking or failing to take some action do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813. We cannot simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then we should not find deficient performance unless the challenged conduct was "so outrageous that no

14

competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Castro's appointed appellate counsel filed a motion for new trial in the trial court, arguing that trial counsel "did not review the case file in its entirety prior to trial" and attaching Castro's unsworn, pro se letter to the trial court that pointed out trial counsel's alleged deficiencies at trial. *See* Tex. R. App. P. 21.2, 21.3. The State responded that the electronic file-sharing system revealed that trial counsel had viewed the case file. *See* Tex. R. App. P. 21.5. The trial court did not hold a hearing on the motion, and the motion was deemed denied. *See* Tex. R. App. P. 21.8(c).

Even though Castro filed a motion for new trial, raising one of the ineffective assertions that he brings on appeal, the trial court did not hold an evidentiary hearing on the motion; therefore, counsel's reasons for his actions and inactions are not reflected in the record. Castro has not presented an adequate record to overcome the presumption of reasonable performance, and we conclude none of Castro's asserted grounds were so facially outrageous that no counsel would have done the same; thus, we may not determine deficient performance on direct appeal.[5] *See Strickland*, 466 U.S. at 689; *Etienne v. State*, No. 08-12-00266-CR, 2014 WL 4450096, at *3 (Tex.

---

[5]For example, a silent record scuttles Castro's deficient-performance argument regarding counsel's possible waiver of the severance request. The danger of consecutive sentences if the charges had been tried separately would have been a sound, strategic basis justifying counsel's abandonment of the prior severance request. *See Adekeye v. State*, 437 S.W.3d 62, 71–72 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

15

App.—El Paso Sept. 10, 2014, no pet.) (not designated for publication); *see also Foth v. State*, No. 03-18-00085-CR, 2019 WL 1474674, at *6 (Tex. App.—Austin Apr. 4, 2019, no pet.) (mem. op., not designated for publication). We overrule point three.

## IV. CONCLUSION

The evidence was sufficient to support the jury's finding that Castro acted in his role or capacity as a member of a criminal street gang when he committed unauthorized use of a motor vehicle. Castro's substantial rights were not adversely affected by a consolidated trial. And the record is inadequate to allow us to assay trial counsel's performance, foreclosing an ineffective-assistance conclusion on direct appeal. Accordingly, we overrule Castro's appellate points and affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 9, 2020