Alcala, J., delivered the opinion for a unanimous Court.
Ricardo Zuniga, appellant, was convicted of two counts of engaging in organized criminal activity and one count of capital murder based on his participation in a shooting that caused the deaths of two *731 individuals. On appeal, he argued that the evidence was insufficient to support his convictions for engaging in organized criminal activity because the record failed to show that he committed the shootings while possessing the intent to establish, maintain, or participate "as a member of a criminal street gang."[1] Agreeing with appellant's argument, the court of appeals vacated his convictions and entered judgments of acquittal as to both counts of engaging in organized criminal activity. We disagree with the court of appeals's analysis and holding. Viewing the evidence in a light most favorable to the jury's verdict as measured against a hypothetically correct jury charge, we conclude that a rational factfinder could have determined that appellant participated in the shootings "as a member of a criminal street gang," in the sense that he was acting in the role, capacity, or function of a gang member in carrying out the offenses. We, therefore, hold that the evidence is sufficient to support appellant's convictions for engaging in organized criminal activity. We reverse the judgment of the court of appeals and reinstate the trial court's judgments of conviction.
I. Background
At trial, eyewitnesses testified that various individuals participated in the assault on the Vargas brothers and that appellant was the shooter. The State also presented testimony to establish that law enforcement had identified appellant as a member of the Barrio Aztecas as early as 2004; that several other individuals who participated in the assault on the Vargas brothers along with appellant were also Barrio Azteca members; that the A & M Bar was a frequent "hangout" for Barrio Azteca members; that the Vargas brothers were members of a rival gang; that both gangs were involved in narcotics trafficking; and that the shooting of the Vargas brothers was consistent with Barrio Azteca activities against rival gang members. Upon hearing the evidence, the jury convicted appellant of all charges. Appellant was sentenced to a mandatory life sentence on the capital-murder charge, and he received two sixty-year sentences for the charges of engaging in organized criminal activity.
*732 (not designated for publication). The court explained that, to support appellant's convictions, the evidence would have to show that appellant committed the predicate offenses of murder with the intent to establish, maintain, or participate as a member of the Barrio Aztecas. Id. at *11. The court held that no rational juror could have concluded that the evidence supported such a determination. Id. at *12. After summarizing the evidence in the record, the court of appeals concluded that the evidence established only that appellant was a "confirmed member of the Barrio Aztecas and that he committed the offense of capital murder, along with other Barrio Azteca members." Id. at *13. That evidence, the court explained, was "not sufficient to establish that appellant had the requisite intent to commit the offense as a member of a criminal street gang." Id. (citing Hart v. State , 89 S.W.3d 61, 63-64 (Tex. Crim. App. 2002) ). The court of appeals vacated appellant's two convictions for engaging in organized criminal activity and entered judgments of acquittal as to those charges.
We granted the State's petition for discretionary review to assess whether the court of appeals erred by concluding that the evidence was insufficient to support appellant's convictions for engaging in organized criminal activity.[3]
II. Analysis
After we describe the applicable standard of review for sufficiency challenges, we will review the elements of the offense based on a hypothetically correct jury charge. As we will explain below, we conclude that the hypothetically correct jury charge here would permit a conviction based on a showing that appellant, while acting "as a member of a criminal street gang," committed the murders of the Vargas brothers. We then explain why we conclude that, applying the proper sufficiency-review standard to the facts in the instant record, the evidence is sufficient to satisfy the statute's requirement that appellant committed the shootings of the Vargas brothers while acting in his role, capacity, or function as a member of the Barrio Aztecas.
A. Standard of Review
When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; Villa v. State, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson , 443 U.S. at 319, 99 S.Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. Williams v. State , 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
*733 . The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. Villa , 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. Cary v. State , 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing Jackson , 443 U.S. at 319, 99 S.Ct. 2781 ); see also Hooper v. State , 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. Merritt v. State , 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. Brooks v. State , 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. Ramsey v. State , 473 S.W.3d 805, 809 (Tex. Crim. App. 2015) ; Hooper , 214 S.W.3d at 13.
We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." Malik v. State , 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id. ; see also Daugherty v. State , 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. Daugherty, 387 S.W.3d at 665.
B. Hypothetically Correct Jury Charge for Engaging in Organized Criminal Activity
We now consider the essential elements of engaging in organized criminal activity as those elements would appear in the hypothetically correct jury charge for the instant case. Malik , 953 S.W.2d at 240. We begin by examining the statutory language. Penal Code Section 71.02 provides that "[a] person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of the following:"[.] TEX. PENAL CODE § 71.02(a). The statute then lists eighteen subsections detailing various predicate offenses that can give rise to a conviction under the statute, including murder, as in the instant case. Id. § 71.02(a)(1)-(18). Of particular relevance to this case, Section 71.01 additionally defines a "criminal street gang" as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." Id. § 71.01(d).[4]
*734 The parties disagree about the hypothetically correct jury charge in this case. With respect to this matter, appellant maintains that the court of appeals correctly described the hypothetically correct jury charge here as requiring proof of three elements: (1) that appellant had the intent to establish, maintain, or participate, (2) as a member of a criminal street gang, and (3) that he committed the murders of the Vargas brothers. See Zuniga , 2016 WL 5121992, at *11-12 ; TEX. PENAL CODE § 71.02(a). The State in turn contends that the hypothetically correct jury charge would require only proof of the latter two elements-that appellant, while acting "as a member of a criminal street gang," the Barrio Aztecas, committed the murders of the Vargas brothers. According to the State, by applying the rules of grammar and common usage to the statutory language, the "intent to establish, maintain, or participate" language pertains only to the "in a combination or in the profits of a combination" language that immediately follows that clause, but not to the "as a member of a criminal street gang" language that appears further down the sentence. In spite of this contention, the State also concedes that, even under its proposed interpretation of the statute, the "as a member of a criminal street gang" language would not permit conviction on a bare finding of the defendant's status as a gang member; rather, in order to prove that the defendant committed the predicate offense "as a member of a criminal street gang," the statute would additionally require proof of a connection or nexus between the defendant's commission of the underlying offense and his gang membership.
At the time that the court of appeals issued its decision in this case, the lower court did not have the benefit of our recent opinion in Villa v. State , 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).[5] We conclude that our analysis in Villa signals that the State's reading of the statute is the correct one and that the court of appeals's interpretation was erroneous. In Villa , similar to the instant case, we considered the sufficiency of the evidence to support Villa's conviction for engaging in organized criminal activity where it was alleged that he, "as a member of a criminal street gang," committed the predicate offense of aggravated assault. In Villa , in describing the statute's evidentiary requirements as they would apply under those circumstances, we stated that the statute "makes it an offense if, 'as a member of a criminal street gang, the person commits or conspires to commit' one of certain enumerated offenses, including aggravated assault." Id. Notably, we omitted any mention of the statute's "intent to establish, maintain, or participate" language. Id. Instead, in assessing the sufficiency of the evidence there, we focused our analysis on considering whether the evidence was sufficient to show that Villa committed the predicate offense of aggravated assault "as a member of a criminal street gang," in the sense that the evidence was sufficient to show his gang membership at the time of the assault. Id. In concluding that the evidence was sufficient, we reasoned that Villa had participated in a group assault on a former gang member and that the complainant *735 had named Villa in the course of identifying other gang members who had assaulted him. Id. at 233. We further reasoned that the jury was permitted to infer from the circumstances that all of the individuals involved in the attack were gang members; that Villa "worked in concert with these other attackers"; and that the attack on the complainant was a "gang-motivated crime." Id. We thus concluded that the evidence was sufficient to uphold Villa's conviction and that the court of appeals had erred by holding otherwise. Id.
We conclude that our description of the relevant statutory elements from Villa was correct and reflected the most grammatically sound reading of the statute. We thus agree with the State's suggestion that the court of appeals erred by concluding that the statute's "intent to establish, maintain, or participate" language applies in a prosecution for engaging in organized criminal activity as a member of a criminal street gang. As a matter of grammar and logic, the statute's intent clause applies only to the phrase that immediately follows it-"in a combination or in the profits of a combination"-but not to the subsequent phrase, "or as a member of a criminal street gang[.]" See TEX. PENAL CODE § 71.02(a). The court of appeals's interpretation results in an illogical reading of the statute that conflicts with the requirement that we must construe statutory terms in accordance with the rules of grammar and common usage. See Yazdchi v. State , 428 S.W.3d 831, 837 (Tex. Crim. App. 2014) (providing that, in interpreting statutes, we "look first to the statute's literal text," and "we read words and phrases in context and construe them according to the rules of grammar and usage") (citations omitted).[6] Applying our interpretation of the statute from Villa here, we conclude that the hypothetically correct jury charge would require proof that appellant, (1) "as a member of a criminal street gang," the Barrio Aztecas, (2) committed the murders of the Vargas brothers. See Villa, 514 S.W.3d at 232 ; TEX. PENAL CODE § 71.02(a). To prove the "as a member of a criminal street gang" element of the offense, the hypothetically correct charge would have additionally required proof that appellant was acting as a member of a group of "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." See TEX. PENAL CODE § 71.01(d)
*736 (providing statutory definition for criminal street gang). Furthermore, we interpret the word "as" in the phrase "as a member of a criminal street gang" as requiring proof that the defendant was acting "[i]n the role, capacity, or function of" a gang member at the time of the offense. See AMERICAN HERITAGE COLLEGE DICTIONARY 78 (3d ed. 1993) (defining the word "as"). To the extent that the court of appeals determined that the hypothetically correct charge here would have also required proof of appellant's intent to establish, maintain, or participate as a member of a criminal street gang in addition to the above requirements, we reject this determination as being inconsistent with the statutory language and our analysis in Villa .
Having set forth the hypothetically correct jury charge for the instant case, we will now explain why we conclude that the evidence in the record, viewed in a light most favorable to the verdict, is sufficient to permit a rational factfinder to have determined that appellant was acting "as a member of a criminal street gang" when he committed the shootings of the Vargas brothers.
C. The Evidence is Sufficient To Show that Appellant Was Acting "As A Member of A Criminal Street Gang" at the Time of the Murders
We note at the outset of our analysis of the evidence in this case that the scope of our sufficiency inquiry is necessarily narrow. Here, the basis for the court of appeals's reversal of appellant's convictions was its conclusion that no rational factfinder could have determined that he committed these offenses "as a member of a criminal street gang," in the sense that the evidence failed to show that he committed these shootings due to his gang membership, as opposed to some other reason. After we summarize the evidence in this record in more detail, we will explain the basis for our conclusion that, viewing that evidence in the light most favorable to the verdicts, the jury was not irrational in concluding that appellant was acting in the role, capacity, or function of "a member of a criminal street gang" at the time that he committed the shootings of the Vargas brothers.
Aide Samaniego was present in the bar on the night of the shootings and saw appellant talking to another person she knew, Jose Cordero. At around 11:30 p.m. or midnight, Samaniego saw Cordero and appellant get up from the table where they had been sitting and walk towards the bar's entrance, where they appeared to engage in a confrontation with some other individuals whom Samaniego did not know. Then they returned to the table. Later, at around 1:30 a.m., Samaniego went outside to smoke. While outside, she noticed three men walk inside the bar. Samaniego described these men as "gangsters." A few minutes later, a group of men that included the three men who had just arrived, as well as appellant, Cordero, and a third person, Victor Gomez, exited the bar, and they walked towards the back of the bar to the parking area. A fight began. Samaniego walked over to see what was happening and, by the time she got there, there were ten or fifteen people kicking and punching two people who were on the ground. Someone yelled out, "cops," and the men who had been fighting began to scatter. Samaniego reported that a few bystanders tried to get near the people on the ground to help them. Appellant and another person started to get into a car as if to leave, but while they were doing so, someone threw a bottle at the car, causing the windshield to shatter. Appellant then got out of his car, opened his trunk, and pulled out a gun. Samaniego saw appellant and the other person he was with begin walking back towards the fight scene. Samaniego ran away from the bar after that. Less than a *737 minute later, she heard two gunshots. Several days later, authorities contacted Samaniego. She identified appellant, Jose Cordero, and a third person, Victor Gomez, as the people in the group who had assaulted and murdered the victims.
Cecilia Estrada arrived at the bar at around 10 or 11 p.m. When the fight broke out a little while after 1 a.m., Estrada ran outside to see what was happening. She saw five to seven men kicking and hitting two men who were lying facedown on the ground. She said appellant and Cordero were two of the men who were committing the assault. She recalled that someone threw a glass bottle at the person who was down on the ground. Estrada began to run away. After a moment, she heard two gunshots. When she looked back, she saw appellant holding a gun in his hand. Two days later, Estrada identified appellant and Cordero in photo lineups.
Raul Reyes of the El Paso Sheriff's Office testified that, upon appellant's arrest for this offense, he had been classified as a member of a security-threat group, the Barrio Aztecas. Reyes testified that appellant's classification was imposed by a three-person panel at the jail that makes such determinations for the purpose of inmate safety. Reyes testified that appellant's classification was based on a multi-factor assessment, including the fact that he had been identified as a Barrio Azteca member by another gang member or informant, he had been arrested with other gang members, and he had been confirmed as a gang member by an outside law-enforcement agency. As a result of his being classified as a member of a security-threat group, appellant was placed in administrative segregation.
Detective Antonio Arias of the El Paso Sheriff's Department testified regarding the investigation that was conducted in this case. Among other matters, he testified that it was difficult to locate witnesses who were willing to cooperate because people "made it clear" that they were afraid of the Barrio Azteca gang. Detective Arias also testified that, through the investigation, law enforcement "found out that Barrio Azteca gang members were hanging out" at the A & M Bar.
The medical examiner Dr. Contin testified that each of the decedents had multiple wounds that were consistent with a group-style assault. Jesus Vargas had multiple contusions from impact with a fist or an object, multiple stab wounds, and a gunshot wound to the neck. His two front teeth had been knocked out, and he had been stabbed in the head with an icepick. Jose Vargas had blunt force injuries to the head, puncture wounds to the chest and neck, stab wounds to the back, and he had been shot in the back of the head.
Viewing this evidence in the light most favorable to the verdict, we conclude that a rational factfinder could reasonably have determined the following basic facts: (1) appellant was an established member of the Barrio Aztecas, a street gang involved in narcotics trafficking, among other illegal activities; (2) the murders took place at a location known to be frequented by Barrio Azteca members; (3) other known Barrio Azteca members participated in the assault on the Vargas brothers alongside and in cooperation with appellant; (4) the Vargas brothers were confirmed members of a rival gang that was also involved in illicit narcotics trafficking; (5) it would be consistent with Barrio Azteca activities for members to commit an assault against rival gang members who encroached upon their territory or failed to pay a fee; and (6) earlier in the evening, appellant told an individual at the bar, "Sparky," that Sparky had to "do his job," but Sparky declined. From these basic facts, the jury was free to draw the reasonable inference that the coordinated assault on the Vargas brothers by Barrio Azteca members was gang-related activity. Further, given the circumstances which show appellant's cooperation with other Barrio Azteca members in committing these assaults against rival gang members, it was not irrational or speculative for the jury to infer that appellant's commission of the shootings was pursuant to his role, capacity, or function as a member of the Barrio Aztecas. To the extent that the court of appeals determined that there was no evidence to support such a conclusion and that the jury's verdict was thus irrational, we reject that determination as being incompatible with the principles that a reviewing court must defer to the jury's weighing of the evidence and its drawing of reasonable inferences that are supported by facts. See Cary , 507 S.W.3d at 757 ; Hooper , 214 S.W.3d at 16-17.
*739 Here, the flaw in the court of appeals's analysis was its implicit assumption that the record would have to provide direct evidence that appellant's motive for participating in the shootings was due to his gang membership, as opposed to some other reason independent of his gang membership. See Zuniga, 2016 WL 5121992, at *13. Specifically, the court of appeals appears to have reasoned that, absent some affirmative evidence to show a gang-related dispute between the victims and the Barrio Aztecas that preceded the assaults, the evidence was insufficient to show that appellant murdered the victims pursuant to his membership in a criminal street gang. Id. As to this matter, we agree with the State's position that the court of appeals's analysis was erroneous because the statute does not require proof of the gang member's particular motivation for committing an offense. Rather, the statute merely requires proof that the defendant engaged in the underlying offense "as a member of a criminal street gang," in the sense that he was acting pursuant to his role or capacity as a gang member at the time that he committed the offense. See TEX. PENAL CODE § 71.02(a). To satisfy this requirement, the evidence need only be sufficient to show some nexus or relationship between the commission of the underlying offense and the defendant's gang membership. Under the particular circumstances of this case, we agree with the State's suggestion that the jury was permitted to reject the possibility that appellant was acting due to independent impulse or for some reason independent of his gang membership, and it was permitted to draw the reasonable inference that appellant was acting in his capacity as a gang member when he participated in the murders of the Vargas brothers. The fact that it was theoretically possible that there was some non-gang related motive for the murders is not the proper inquiry in a sufficiency review, in which we are bound to defer to the factfinder's weighing of the evidence and its drawing of reasonable inferences. See Wise v. State, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) ("For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt.... Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict.") (citations omitted).
III. Conclusion
Having determined that the evidence is sufficient to permit a rational factfinder to conclude that appellant committed the murders of the Vargas brothers as a member of a criminal street gang, we reverse the judgment of the court of appeals and reinstate the trial court's judgments of conviction for appellant's two charges of engaging in organized criminal activity.
Tex. Penal Code § 71.02(a).
Counts II and III of the indictment alleged that appellant, "as a member of a criminal street gang, to wit: Barrio Azteca, commit[ed] the criminal offense of murder" of each Vargas brother.
We granted review of the following ground in the State's petition for discretionary review:
In holding the evidence legally insufficient to support the defendant's convictions for engaging in organized criminal activity, specifically, that the State failed to prove that the defendant committed the predicate murders as a member of a criminal street gang, the Court of Appeals improperly required proof of the motive of the gang itself. Even after recognizing that the evidence showed that the defendant and his fellow gang members acted in concert in killing the victims, the Court of Appeals nevertheless improperly held that absent proof of why the gang attacked and killed the victims, the evidence was insufficient to allow the jury to rationally conclude that the killings were a gang activity and that the defendant participated in the killings as a member of the gang.
Although it is not directly at issue in the instant case, the statute also contains a statutory definition for "combination." Tex. Penal Code § 71.01(a) (defining combination as "three or more persons who collaborate in carrying on criminal activities, although: (1) participants may not know each other's identity; (2) membership in the combination may change from time to time; and (3) participants may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations").
The basis for the court of appeals's holding regarding the hypothetically correct jury charge was our prior decision in Hart v. State, 89 S.W.3d 61, 63 (Tex. Crim. App. 2002). But Hart was an engaging case that involved an alleged criminal combination, not a criminal street gang, and thus Hart 's analysis with respect to the evidentiary requirements to establish the offense of engaging is not precisely on point or controlling in the instant case.
Because we conclude that our description of the statutory elements in Villa was correct, we do not attempt to undertake a full statutory analysis of Section 71.02(a) here. We do note, however, that we agree with the State's arguments regarding the statutory language. Specifically, we agree that, because the statute already requires proof that the defendant was acting in his capacity or role as a member of a group of "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities," it would not make logical sense to also require proof of a defendant's intent to establish, maintain, or participate as a member of a criminal street gang in addition to this requirement. See Tex. Penal Code §§ 71.01(d), 71.02(a). Furthermore, we take note of the Legislature's use of the word "or" to separate the relevant clauses addressing either a criminal combination or a criminal street gang. See id. § 71.02(a). "[T]he disjunctive 'or' usually, but not always, separates words or phrases in the alternate relationship, indicating that either of the separated words or phrases may be employed without the other. The use of the disjunctive usually indicates alternatives and requires that those alternatives be treated separately." Perez v. State , 11 S.W.3d 218, 225 (Tex. Crim. App. 2000) (Holland, J., concurring) (quoting 1A SUTHERLAND STAT. CONST. § 21.14 (5th ed. 1993 & Supp.1999) ). In light of these considerations and our analysis in Villa , we conclude that the "intent to establish, maintain, or participate" language applies only to engaging cases that are based on an alleged combination, and not to cases such as the instant one involving alleged criminal street gang activity.
See Tex. Code Crim. Proc. art. 61.02 (detailing procedures and criteria for including an individual in the statewide intelligence database established for the purpose of investigating or prosecuting the criminal activities of criminal combinations or criminal street gangs).