**Affirmed as Modified in Part, Reversed and Remanded in Part, and Opinion filed February 4, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00143-CR

---

## LORENZO ANTONIO ALFARO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 212th District Court
### Galveston County, Texas
### Trial Court Cause No. 18-CR-0913

---

## OPINION

Appellant Lorenzo Antonio Alfaro challenges the sufficiency of the evidence in support of the jury's finding that he committed the offense of engaging in organized criminal activity. We modify the trial court's judgment to show conviction for a lesser included offense, affirm the conviction as modified, reverse the imposition of sentence, and remand for a new punishment hearing.

## *Background*

A man in Galveston, Texas named Edward Williams was under investigation for selling marijuana, and an undercover detective going by the name "Julio" was brought in to develop a relationship with Williams as part of the investigation. Julio told Williams that he wanted to purchase heroin. To facilitate the sale of heroin, Williams introduced Julio to Cameron Anonsen.

Anonsen sold Julio approximately one-half gram of heroin. Julio told Anonsen he wanted to purchase more. Anonsen and Julio drove to Mallory Arbuckle's home where she sold Anonsen "black tar heroin" while Julio waited outside. Julio accepted the heroin, but later told Anonsen that Julio and his business partner wanted a higher quality of heroin called "China white." Julio testified that Anonsen then contacted "his next guy," appellant.

Anonsen operated as the "middle man" between Julio and appellant. Julio told Anonsen that he wanted to purchase six grams of heroin. Anonsen set up the transaction, and then Julio picked up Anonsen, and they drove to meet appellant. Anonsen met appellant in an alley behind a building where Julio observed appellant hand Anonsen a baggy in exchange for money. Appellant did not have the agreed upon six grams of heroin, but delivered just over two grams of product.

Julio and Anonsen then drove to a Texaco gas station, to wait for appellant "to re-up and buy the rest he promised." While they were waiting, Anonsen injected some of the drugs. Eventually, Julio said, "[L]et's go and we will try to get with [appellant] later." They stopped at a smoke shop, bought a scale, and then went to Anonsen's house where they weighed the remaining product and split it up.[1]

---

[1] Julio took a baggy that weighed 1.2 grams and delivered it to the police station. A

Another day, Julio met Anonsen at his house, where they waited for about two hours to hear from appellant. Julio testified that Anonsen was "unable to get in touch with [appellant]" but "[i]t got to a point where [Julio and Anonsen] were directed to meet with another person at a gas station . . . and that person would supply [them] with what [Julio] was looking for." That person was Jermel Lewis.

When Julio and Anonsen arrived at the gas station, Anonsen got into Lewis's car. After what seemed like a long time, Julio got out of his car and approached Lewis's car. Anonsen came over and showed Julio the product Anonsen had purchased. Julio said, "[T]hat's not what I want." Anonsen got back into Lewis's car and returned the product. Right after that transaction, Lewis was arrested for drug possession.

Anonsen told Julio that he would try to contact appellant again, but Anonsen was never able to get in touch with appellant. Anonsen eventually gave Julio appellant's phone number. Julio called and texted appellant many times and finally spoke with him. A transcript of their text messages and a recording of their phone conversation were admitted at trial. Julio texted and asked appellant, "Can u do 4g?" which meant, "Can you sell me 4 grams?" Appellant responded by asking Julio if they knew each other. Julio reminded appellant that they had met through Anonsen, and appellant responded that he thought he remembered Julio.

On the phone call, appellant informed Julio that appellant ended his relationship with Anonsen because appellant thought Anonsen was talking to the police. Appellant also said that he sent his "homeboy" to do a transaction for him, his "homeboy" was arrested, and appellant had to bond him out of jail. Julio believed appellant was referring to Lewis because "when [Anonsen] was speaking

---

forensic scientist testified at trial that the net weight of the substance without the baggy was .93 grams. A representative sample of the substance tested positive for heroin.

with [appellant,] we got directed to go to a gas station [and] Jermel Lewis was the guy that was doing [the transaction] for [appellant]" and because Lewis was arrested right after that transaction. Appellant told Julio that he believed Anonsen set up Lewis. Two days after the phone conversation, appellant texted Julio, "H stain." Julio testified that term meant appellant was offering to sell more heroin.

Appellant was indicted by a grand jury as follows:

> [Appellant] did . . . with the intent to establish, maintain, or participate in a combination or in the profits of a combination, said combination consisting of the defendant and Cameron Matthew Anosen [sic], Mallory Paige Arbuckle, Edward Williams, and Jemel [sic] Cherrod Lewis, who collaborated in carrying on criminal activity, intentionally and knowingly commit the offense of Delivery of a Controlled Substance, to wit: Heroin, in an amount of one gram or more but less than four grams[.]

A jury found appellant guilty of "engaging in organized criminal activity, as charged in the indictment."[2]

### *Continuous Course of Criminal Activity*

Appellant challenges the sufficiency of the evidence to prove an ongoing combination between himself and at least two others named in the indictment. When reviewing sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence.

---

[2] On appeal, appellant does not challenge the jury's finding that he delivered heroin in an amount of one gram or more but less than four grams.

*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to the elements of the offense as defined by the hypothetically correct jury charge for the case. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*. The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Id*.

A defendant commits the offense of engaging in organized criminal activity if, with the intent to establish, maintain, or participate in a combination, he commits or conspires to commit one or more of the enumerated offenses, including delivery of a controlled substance. Tex. Penal Code § 71.02(a)(5). The Penal Code defines a "combination" as three or more persons who collaborate in carrying on criminal activities. *Id*. § 71.01(a). The Court of Criminal Appeals has construed this language as requiring a "continuing course of criminal activities." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999); *see also Lashley v. State*, 401 S.W.3d 738, 743 (Tex. App.—Houston [14th Dist.] 2013, no pet.). It involves more than the intent to commit an enumerated offense, a plan to commit a single

act, or proof of working jointly to commit a crime—it requires proof of continuity. *Hart v. State*, 89 S.W.3d 61, 63–64 (Tex. Crim. App. 2002); *Nguyen*, 1 S.W.3d at 696–97; *Lashley*, 401 S.W.3d at 743. The activities do not have to individually be criminal offenses to satisfy the statutory requirement, and a single criminal offense can be sufficient, depending on the circumstances. *Lashley*, 401 S.W.3d at 743 (citing *Nguyen*, 1 S.W.3d at 697, and *Dowdle v. State*, 11 S.W.3d 233, 236 (Tex. Crim. App. 2000) (continuous activities after a shooting included fleeing, re-grouping, discussing a plan of action, and traveling to another country with stolen goods)). However, the statute requires proof of intended continuity, i.e., that "the appellant intended to establish, maintain, or participate in a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Nguyen*, 1 S.W.3d at 697; *Lashley*, 401 S.W.3d at 743.

Appellant contends the evidence is insufficient to prove that he intended to participate in a continuing course of delivery of a controlled substance with at least two other conspirators named in the indictment. As mentioned, Anonsen, Arbuckle, Williams, and Lewis are all named as alleged coconspirators in the indictment. The investigation started with Williams, who brought in Anonsen. There is no evidence connecting Williams with appellant. Anonsen brought in Arbuckle for the "black tar" heroin sale. After that, Anonsen contacted appellant. Appellant also asserts that Lewis "showed up in a later deal" with no connection to appellant, that Julio eventually contacted appellant directly, and that appellant was "cutting his ties with Anonsen and turning to reliance on . . . Lewis." Therefore, according to appellant, there is no evidence of an ongoing combination between appellant and two other named conspirators.

The State contends that there is sufficient evidence that appellant engaged in an ongoing combination with two other named conspirators because Julio started

6

with Williams and moved "up the narcotics supply chain." Williams introduced Julio to Anonsen, who in turn introduced Julio to Arbuckle, appellant, and then Lewis.[3] There is no evidence that appellant had any relationship with Williams or Arbuckle.

We agree with appellant that the evidence does not show any connection between appellant and Williams or appellant and Arbuckle. Our question is whether the evidence supports a finding of an ongoing combination between appellant, Anonsen, and Lewis. Julio testified that he and Anonsen "were directed to meet [Lewis] at a gas station." Julio presumed that the meeting was at appellant's direction because (1) "we got directed to go to a gas station [and] Lewis was the guy that was doing it for [appellant]. That's why we went over there and that's who we went to meet"; (2) right after the transaction with Lewis at the gas station, Lewis was arrested for drug possession; and (3) at a later time, appellant told Julio that he had sent his "homeboy" to do a transaction for him, that person was arrested, and appellant bonded that person out of jail. The State contends that a jury could reasonably infer from this evidence that there was a combination between appellant, Anonsen, and Lewis.

The context of the evidence presented at trial leads us to conclude that Julio did not know whether Anonsen spoke to appellant about the meeting with Lewis. Julio did not testify that he was present during any such conversation or that Anonsen told him about any such conversation, and there is no evidence that appellant was Anonsen's only source of heroin.[4] The most we can infer from

---

[3] We recently held that there was legally insufficient evidence to support a finding that Williams "was involved in a combination with Alfaro, Lewis, or Arbuckle to deliver marijuana." *Williams v. State*, No. 14-19-00532-CR, 2020 WL 3863118, at *3 (Tex. App.—Houston [14th Dist.] July 9, 2020, no pet.) (mem. op., not designated for publication).

[4] This is especially true since Arbuckle also sold heroin to Anonsen and Julio and there is no evidence linking Arbuckle to appellant.

Julio's testimony regarding Anonsen is that Julio and Anonsen were directed by someone to meet Lewis at the gas station.

However, other evidence supports a reasonable inference that appellant sent Lewis to sell drugs to Julio and Anonsen. Lewis was arrested right after the transaction with Julio and Anonsen. Later, appellant told Julio that he had sent his "homeboy" to do a transaction for him and that person was arrested afterward. This is some evidence from which a jury could reasonably infer that appellant, Anonsen, and Lewis worked together one time to sell heroin to Julio. We turn to whether there is legally sufficient evidence to support a reasonable inference that appellant, Anonsen, and Lewis intended to work together in a *continuing course* of criminal activity.

To satisfy the continuity element under *Nguyen*, the State must offer evidence to prove that a defendant intended to participate in a continuing course of criminal activity. *Lashley*, 401 S.W.3d at 744. The combination's members must be more than temporarily organized to engage in a single criminal episode. *Id*. Proof of an intent to participate in a criminal combination must extend beyond a single criminal episode, ad hoc effort, or goal, regardless of whether multiple laws were broken within the confines of that episode or effort. *Id*. Evidence of multiple criminal violations alone does not permit the inference that the members of the group intended to continue working together beyond the completion of an episode or achievement of a goal. *Id*. Evidence must be offered that allows a jury to infer that the group intended to continue engaging in illegality over a period of time. *Id*. at 745.

Acknowledging that Julio eventually made contact directly with appellant, appellant contends there is no evidence of an intended ongoing scheme among three of the purported conspirators named in the indictment. According to

8

appellant, "[r]ather, the State offered evidence that [appellant] was cutting his ties with Anonsen and turning to reliance on . . . Lewis." The State contends that the following evidence supports a reasonable inference of continuity: (1) appellant delivered heroin to Anonsen and Julio; (2) appellant told Anonsen and Julio he would "re-up"; (3) Anonsen and Julio were directed to purchase heroin from Lewis; (4) appellant told Julio during their phone conversation that Anonsen asked appellant to meet, appellant sent his "homeboy," and appellant had bonded that person out of jail; and (5) appellant told Julio "I'll hit you back," meaning he would contact Julio when he had heroin to sell in the future. According to the State, appellant's statement that he bonded his "homeboy" out of jail gives rise to a "reasonable inference this made Lewis available to continue participating in the criminal activities."

Appellant told Julio that he bonded his "homeboy" out of jail because his friend was arrested for possessing drugs that belonged to appellant. Appellant also said that Lewis only sold marijuana and not heroin. Thus, this evidence supports an inference that appellant bonded Lewis out of jail because Lewis went to jail for appellant. That alone is not evidence that appellant intended to ask Lewis to continue dealing heroin. Even if it were, it is not evidence that appellant, Anonsen, and Lewis were all working together in a continuing course of criminal activity. In fact, appellant told Julio that he no longer trusted Anonsen and he would not work with Anonsen any longer. Moreover, Julio testified at trial that there was no evidence of any communication between Anonsen and appellant showing that they, or any of the other defendants mentioned in the indictment intended "to go forward," and Julio admitted he had no knowledge as to their intent, or whether "this was a one time sale." Julio also stated that he did not "have any direct dealings as far as any hand to hand transactions" with appellant. Julio indicated

9

there was no continuity because appellant stated he was not "messing around with Julio, Cam, or anybody" and there was no other transaction between Julio and appellant.

The evidence does not support a reasonable inference that appellant, Anonsen, and Lewis intended to participate in a continuing course of criminal activity. At most, the evidence shows that appellant had worked with Anonsen on more than one occasion and one time sent his "homeboy," possibly Lewis, to sell drugs to Anonsen and appellant. It does not show that appellant and two other alleged conspirators in the indictment were engaged in a continuing course of criminal activity. *See id.* (holding evidence of single criminal episode involving multiple burglaries was insufficient to sustain guilty verdict for organized criminal activity because "[n]o evidence was offered from which a factfinder could infer an intent that the combination would perpetuate and engage in criminal activity beyond the conclusion of this single episode"); *see also Munoz v. State*, 29 S.W.3d 205, 209–10 (Tex. App.—Amarillo 2000, no pet.) (holding evidence of multiple crimes was insufficient because nothing suggested the group intended to continue working together in a continuous course of criminal activity beyond realizing a particular, single goal of selling marijuana). Taken in a light most favorable to the verdict, nothing in the record permits the inference that appellant intended to engage in a continuous course of criminal activity with at least two of the conspirators alleged in the indictment. *See Lashley*, 401 S.W.3d at 745. We turn to the appropriate remedy.

### *Lesser Included Offense*

Appellant concedes that "[t]he evidence did show [he] personally delivered over a gram of heroin, but less than four grams." Appellant asks the court to modify the judgment to show a conviction for the lesser included offense of

delivery of a controlled substance in an amount of one gram or more but less than four grams and remand the case for a new trial on punishment. The State agrees that if the evidence is insufficient to support the finding that appellant is guilty of engaging in organized crime, that would be the proper remedy.

As we have noted, the Rules of Appellate Procedure authorize us to reform a judgment of conviction after a jury trial to reflect conviction for a lesser included offense if we determine the evidence is insufficient to support a conviction for the greater offense. *Id*. (citing Tex. R. App. P. 43.2(c), (d)). As submitted in the indictment and jury charge in this case, delivery of a controlled substance in an amount of one gram or more but less than four grams is a lesser included offense of engaging in organized criminal activity.[5] The indictment in this case alleged that appellant participated in a criminal combination and committed the underlying offense of delivery of a controlled substance in an amount of one gram or more but less than four grams. *See* Tex. Health & Safety Code § 481.112(a), (c) (defining delivery of a controlled substance of one gram or more but less than four grams as a second degree felony). The jury charge also allowed the jury to convict appellant of that lesser included offense. Thus, we are permitted to modify and reform the judgment to the lesser included offense if the evidence supports it. *See Lashley*, 401 S.W.3d at 746.

Turning to the record, Julio testified that appellant delivered 2.2 grams of a substance to Anonsen and Julio. After Anonsen tried some of the substance and appellant and Julio split the remainder, Julio delivered .93 grams to the police station. A representative sample tested positive for heroin. As appellant concedes, and the State agrees, this evidence was sufficient to convict appellant of delivery of

---

[5] One offense is a lesser included of another offense if it is established by proof of the same or less than all the facts required to establish the commission of the greater charged offense. Tex. Code Crim. Proc. art. 37.09(1), (3).

11

a controlled substance in an amount of one gram or more but less than four grams.

### *Conclusion*

The evidence was legally insufficient to support appellant's conviction for engaging in organized criminal activity; however, the evidence was sufficient to support conviction for the lesser included offense of delivery of a controlled substance in an amount of one gram or more but less than four grams. Accordingly, we modify the trial court's judgment to show conviction for the lesser included offense, affirm the conviction as modified, reverse the imposition of sentence, and remand for a new punishment hearing. *See id*. at 748.


/s/     Frances Bourliot
        Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.

Publish — TEX. R. APP. P. 47.2(b).