

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PATRICK HOLLENBECK, | § | No. 08-23-00251-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 120th Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20210D03095) |
| | § | |

## **MEMORANDUM OPINION**

A jury convicted Patrick Hollenbeck of delivery of a controlled substance in penalty group one (methamphetamine) in an amount greater than one gram but less than two hundred grams. Hollenbeck's sentence of 8 years' imprisonment was probated by the court to a term of 8 years community supervision. In a single issue on appeal, Hollenbeck contends the evidence at trial was insufficient to establish his identify as the person who committed the charged offense. We affirm.

# I. BACKGROUND

Hollenbeck was charged by indictment with one count of the manufacture or delivery of a controlled substance (methamphetamine) in an amount of more than four grams but less than two hundred grams. After he pleaded not guilty, the case proceeded to a jury trial.

Special Agents Mario Aranda and Jose Garcia with the Texas Department of Public Safety (DPS) testified that they worked undercover investigating gang members involved in drug trafficking, human smuggling, and firearm trafficking. While undercover, Aranda and Garcia would pose as potential drug dealers and attempt to infiltrate gang members or other people selling drugs in El Paso. On the night of January 17, 2020, the agents made plans to purchase narcotics from Andrew Garvin, a man they had identified as a dealer. Aranda contacted Garvin to set up a methamphetamine purchase at a house in northeast El Paso. Aranda and Garcia arrived at the house in an undercover police vehicle around 6:00 p.m. At the same time, Special Agent Priscilla Rodriguez, the lead agent on the investigation, was conducting surveillance about three houses down from the northeast residence.

Aranda went inside the house while Garcia stayed in the undercover vehicle. Aranda already knew who Garvin was and recognized him when he entered the house. He described Garvin as a "heavy-set male." Garvin told him he did not have the meth at the moment and told Aranda to sit and wait for it in the living room with other individuals. Aranda did not know the other individuals in the living room. Aranda explained that for officer safety purposes, he decided to exit the house and left. He maintained contact with Garvin via phone and waited in the northeast area until Garvin called him. At approximately 8:00 p.m., Garvin told Aranda to come back to the residence. When they arrived, they saw a man outside the house.

2

Aranda told the man to get inside the car and he went near the passenger side to get in. The man saw Garcia sitting in the passenger side and then walked to the front of the vehicle. Garcia testified it appeared the man got "freaked out" when he saw Garcia in the vehicle. The man then told Aranda to get out of the vehicle to meet him in front of the vehicle. Then, while outside the car, Aranda and the man exchanged, hand-to-hand, the purchased meth for the agreed payment. Aranda testified that after he handed his money to the man, he received a substance from him. He believed it was meth. The State additionally introduced audio recordings of the undercover transaction.

Following the exchange, Aranda and Garcia drove back to the office. Rodriguez saw Aranda and Garcia leave the house but did not follow them right away. She remained at the house to watch for other activity. After about 20 minutes, she left and went back to the office. At the DPS office, Aranda transferred the substance to Rodriguez. Rodriguez then submitted the narcotics to the lab for testing and the substance was confirmed to be 12.05 grams of methamphetamine.

Aranda testified that, on the night of January 17, he did not know the identity of the man who sold him the drugs. Although it was dark, Aranda testified he had face-to-face contact with the man and described that he wore a sweater, and he was tall. Garcia testified he saw the man clearly because he came right up to his door. Garcia described the man was between 5'9" and 5'10" and was approximately 185 pounds. He testified he was a white male and had a "reddish-brownish" beard. Rodriguez reiterated that, following the transaction, Aranda and Garcia gave her a description of the unidentified male as approximately 5'11", 180 to 185 pounds, bald, with brownish-reddish facial hair. She further testified they told her the man "looked similar to Garvin, just a lot thinner." Rodriguez then relayed the intelligence information she collected to a DPS analyst. Specifically, she provided the description of two men, two license plate numbers, two

phone numbers, and an address. A few days later, Rodriguez received photographs from the analyst, depicting individuals who might have been involved in the transaction. She showed the pictures separately to Aranda and Garcia: one of Garvin, one of Hollenbeck, and one of a male named "Manny," who was also suspected of being present at the house during the transaction.

Aranda immediately identified the picture of Hollenbeck as the person whom he had completed the hand-to-hand exchange. He also told Rodriguez that he recognized Manny from inside the house but that he was not the individual who sold him drugs. He also identified Garvin but told Rodriguez he was not the individual who sold him drugs. Garcia also identified Hollenbeck as the man who walked up to the undercover vehicle before the exchange with Aranda. Additionally, both Aranda and Garcia identified Hollenbeck in the courtroom as the individual who sold Aranda drugs on January 17.

As a witness for the defense, Garvin testified that Hollenbeck was his half-brother.[1] He described that he and Hollenbeck had a contentious relationship. He claimed he had not seen Hollenbeck since 2015. Specifically, he testified he did not see Hollenbeck at his residence on the night of January 17. Garvin additionally testified that his uncle, Brian Harper, would hang out at the house with him at times. The defense introduced a picture of Harper, who was a white male. Rodriguez previously testified that Harper's name came up in her investigation as someone associated with a house several houses down from the house in this case. She testified she did not see Harper at the involved house on the day of the offense.

After deliberating, the jury found Hollenbeck guilty of the charged offense and assessed punishment of 8 years' imprisonment and a $2,000 fine. The jury also found that because Hollenbeck had not been previously convicted of a felony in this or any other state, it

---

[1] Prior to Garvin's testimony, Rodriguez testified that Garvin and Hollenbeck were cousins.

4

recommended that only the sentence be suspended (not the fine), and he be placed upon community supervision. The trial court rendered a judgment of conviction and imposed a sentence in accord with the jury's recommendation.

## II. SUFFICIENCY OF THE EVIDENCE

In his sole issue on appeal, Hollenbeck asserts the evidence presented at trial was insufficient to establish beyond a reasonable doubt that he was the man who committed the offense charged.

### A. Standard of review and applicable law

In a legal sufficiency review, "we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). The jury is the sole judge of the credibility of witness testimony and the weight to assign that testimony, the jury may believe all, some, or none, of any witness's testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). "The reviewing Court must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13. "We may not re-weigh the evidence or substitute our judgment for that of the factfinder." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). "The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence." *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the

incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.*

For a charge of delivery of a controlled substance in penalty group one, the State was required to prove that: (1) Hollenbeck; (2) knowingly or intentionally; (3) delivered; (4) methamphetamine; (5) in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (defining the felony in the first degree offense of possession of a controlled substance in penalty group 1); Tex. Health & Safety Code Ann. § 481.102(6) (designating methamphetamine as a substance in penalty group 1). Here, the element of identity is the only element contested on appeal. That is, Hollenbeck contends the evidence was legally insufficient to establish beyond a reasonable doubt that *he* was the person who knowingly and intentionally delivered methamphetamine as charged by the indictment.

**B. Analysis**

Hollenbeck's argument on appeal is that Aranda and Garcia's testimony identifying Hollenbeck, through photographs shown to them by Rodriguez, was unreliable and should amount to insufficient evidence to support the jury's guilty verdict. Hollenbeck contends that "photo arrays, photo showups, and lineups . . . corrupt jury trials" and that neither Aranda nor Garcia were provided with a proper means of identifying the man who sold them drugs. Hollenbeck did not file a motion to suppress the identification that led to Hollenbeck's arrest or otherwise object to the introduction of the photographs at trial. Accordingly, Hollenbeck failed to preserve any challenge to the photo "array." *See* Tex. R. App. P. 33.1(a); *Farnen v. State*, No. 08-05-00143-CR, 2006 WL 1132874, at *4 (Tex. App.—El Paso Apr. 27, 2006, no pet.) (holding failure to object waived any

complaint about possible confusion or misidentification (citing *Rohlfing v. State*, 612 S.W.2d 598, 601 (Tex. Crim. App. 1981))). Even so, there was additional evidence to support the jury's verdict.

At trial, both Aranda and Garcia identified Hollenbeck in the courtroom as the man who sold Aranda drugs on the night of January 17. Accordingly, Aranda's and Garcia's in-court identification was sufficient to support the jury's verdict. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (concluding that the testimony of an eyewitness alone was sufficient to support the jury's verdict.); *Soria v. State*, No. 08-20-00074-CR, 2022 WL 2965979, at *5 (Tex. App.—El Paso July 27, 2022, no pet.) (victim's in-court identification of defendant as his assailant was, by itself, sufficient to establish guilt); *Sandoval v. State*, No. 08-11-00283-CR, 2013 WL 5873296, at *14–15 (Tex. App.—El Paso Oct. 30, 2013, pet. ref'd) (not designated for publication) (victim's in-court identification of defendant as perpetrator of aggravated robbery was legally sufficient to support a conviction).

Additionally, both Aranda and Garcia testified they viewed Hollenbeck at close range on the night of January 17. Rodriguez testified both Aranda and Garcia provided her with the same description of the man they witnessed selling Aranda drugs. The descriptions they gave were consistent with Hollenbeck's appearance. As the trier of fact, it was the jury's responsibility to resolve any conflicts in the testimony, weigh the evidence, and draw reasonable inferences therefrom. *See Jackson*, 443 U.S. at 319. There was evidence that both Aranda and Garcia already knew Garvin and what he looked like, excluding him as the one who exchanged the drugs. Also, both Aranda and Garcia confirmed that it was not Manny, as the individual was a white male and Manny was a Hispanic male. Accordingly, it was reasonable for the jury to conclude that Hollenbeck was the man from whom Aranda bought drugs on the night of January 17. The jury

7

was also free to reject any conflicting evidence including Garvin's testimony that he did not see Hollenbeck at his house that night.

Finally, Hollenbeck contends that it was too dark on the night of January 17, the agents only identified him through photographs days later, and the agents did not know of the proper procedure for photo lineups. He argues these factors made the agents' identification "insufficient." Although Hollenbeck categorizes his contention as one pertaining to the sufficiency of evidence, we still cannot re-weigh the evidence presented to the jury. *See Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732. We defer to the jury's credibility findings and presume it resolved any conflicts in favor of the verdict.

Viewing all the evidence in the light most favorable to the verdict, we conclude there was legally sufficient evidence to prove beyond a reasonable doubt that Hollenbeck delivered methamphetamine to Aranda on the night of January 17. *See Zuniga*, 551 S.W.3d at 732.

## III. CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

January 22, 2025

Before Palafox and Soto, JJ, and Perez, Judge
Perez, Annabell, Judge, sitting by assignment

(Do Not Publish)