

# In the Court of Criminal Appeals of Texas

### No. PD-0176-25

ISRAEL GARCIA HERNANDEZ, *Appellant*

v.

THE STATE OF TEXAS

On Appellant's Petition for Discretionary Review
From the Thirteenth Court of Appeals
Willacy County

YEARY, J., filed a dissenting opinion.

I join Judge Parker's dissenting opinion. There is no dispute about the meaning of "reasonable suspicion" in this case. The jury charge accurately defined it for the jury: "'Reasonable suspicion' means facts known to the officer that would lead a reasonable law enforcement officer to reasonably suspect that a specific person has

engaged in criminal activity, is engaging in criminal activity, or is about to engage in such activity." Moreover, "[i]t is enough to satisfy . . . reasonable suspicion that the information [known to the officer] is sufficiently detailed and reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing." *Derichsweiler v. State*, 348 S.W.3d 906, 917 (Tex. Crim. App. 2011).

The court of appeals identified sufficiently detailed and reliable information to satisfy this standard:

> Officer Garcia testified that although appellant was not driving a Chevy Silverado, he was driving a truck; his truck was the only vehicle in the very rural area; the truck was "in the vicinity that the caller had advised" and "in close proximity to" the mailbox of the 911 caller; the truck "was the only vehicle out there in the dirt road"; and there had been "a lot of incidences of human smuggling" in that area. The jury was allowed to consider Officer Garcia's experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person such as his knowledge of the human trafficking in that area. * * * Officer Garcia may have relied on the 911 caller's use of the term "suspicious" and inferred that the caller suspected that the driver of the truck appeared to be engaged in criminal activity or would soon be engaged in criminal activity. *See Derichsweiler*, 348 S.W.3d at 917. Furthermore, the jury may have reasonably inferred that Officer Garcia properly determined that criminal activity was afoot based on appellant's proximity to the 911 caller's

mailbox late at night after the 911 caller saw a suspicious truck driving slowly by his rural residence. *See id.* at 914. Officer Garcia was not required to articulate that a particular crime had occurred. *See id.* Instead, the State needed to merely provide evidence showing beyond a reasonable doubt that Officer Garcia had a reasonable suspicion that criminal activity may be afoot. *See id.* [1]

*Hernandez v. State*, No. 13-24-00036-CR, 2025 WL 555779, at *3 (Tex. App.—Corpus Christi, Feb. 20, 2025) (mem. op., not designated for

---

[1] The majority claims that Appellant's proximity to the caller's mailbox or address should not be taken into consideration because there is no testimony to support the fact that "Appellant's truck was observed at any time by Garcia to be close to the caller's house or mailbox." Majority Opinion at 12. However, Officer Garcia was asked when he was on the witness stand: "when you arrived, what did you see?" He responded: "I observed a vehicle on a dirt road *in close proximity to the residence.*" RR Vol. 3, p. 21 (emphasis added). It seems to me that the majority just disagrees with Garcia's idea of what constitutes "close proximity." And moreover, what constitutes "close proximity[,]" except in the most extreme circumstance, should be left as a question for the jury to resolve. The Court should not simply take that question from the jury and shout in its opinion deciding this case: "No, it wasn't close!" Also, Garcia later responded *affirmatively* to the question: "Based on that area, did you know whether it was likely that she [the caller] would have seen . . . a vehicle where Defendant's vehicle was seen?" Based on Garcia's affirmative response to this question, a jury could have reasonably inferred that Appellant was close to the caller's address, and hence, her mailbox when Garcia first saw him. And, only a few questions later, Garcia was asked "if 30 minutes later, a vehicle is still kind of driving in the area, how does that play into your analysis?" RR Vol. 3, p. 82. To which Garcia responded, saying: "by me observing a vehicle still in the area, *in the same vicinity*, *as the caller had stated*, that is reasonable suspicion for me to attempt to make contact with the occupants of the vehicle[.]" RR Vol. 3, p. 83-84. Thus, in contrast to the Court's chosen negative view of the evidence, it was indeed acceptable for the court of appeals to include Appellant's proximity to the caller's address and mailbox in its sufficiency analysis, viewing the evidence in the light most favorable to the jury verdict.

publication).

In overturning the court of appeals' judgment, the majority seems to parse out each fact and then to state that, *alone*, each fact would not support a jury's rational finding that the detention was lawful. *See* Majority Opinion at 13 ("Officer Garcia himself testified, driving a truck slowly on a dirt road at night is not on its own suggestive of criminal activity."); *id.* at 18–19 ("Like in *Arguellez*, there was nothing 'unusual, suspicious, or criminal' about an individual driving slowly on a dirt road at night."); *id.* at 19–20 ("To the extent that the State relies on Officer Garcia's personal knowledge that this particular area was known for human trafficking, that argument is not persuasive. If that were sufficient, any vehicle driving slowly in an area with known activity of human trafficking could be detained on suspicion that that vehicle was engaged in human trafficking."); *id.* at 20 ("And the 9-1-1 call does not move the needle: all it describes is a 'suspicious' vehicle but provides no indication that human trafficking was at play.").

Thus, the majority seems to highlight each inconsistent fact that might undercut the conclusion that the officer developed reasonable suspicion sufficient to detain Appellant. However, this is not consistent with our clearly defined standard of review for analyzing legal sufficiency of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018) (courts reviewing legal sufficiency "must not engage in a 'divide and conquer' strategy but must consider the

cumulative force of all the evidence"). The appropriate standard of review requires the consideration of *all* the evidence in light *most favorable to the jury's verdict*—not each piece of evidence evaluated individually and in a light most likely to undermine the jury's verdict. *Id*. at 732. The focus should be on what the evidence *does* show—cumulatively, not on the weaknesses of individual and isolated pieces of evidence or on what might be missing. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) ("'appellate courts are not permitted to use a "divide and conquer" strategy for evaluating sufficiency of the evidence' because that approach does not consider the cumulative force of all the evidence."). The court of appeals conducted an appropriate analysis, and this Court should not second-guess it.

It is also arguable that the majority is mistaken to rely on *Long v. State*, 535 S.W.3d 511 (Tex. Crim. App. 2017), as authority for the proposition that our review of the jury's reasonable suspicion determination should be *de novo*. The Court in *Long* was endeavoring to construe statutory language, and to then assess whether, by a proper understanding of that statutory language, the evidence in that case was sufficient to allow the jury to draw the required conclusions about the defendant's guilt. *Id.* at 520. Of course, the proper construction of the statute at issue in *Long* was a pure question of law, subject to our *de novo* review. Here, in contrast, the definition of reasonable suspicion is undisputed; what is in dispute is simply whether the facts in their

totality are sufficient to meet that definition. There is no statute that needs to be interpreted. Thus, this is not a purely legal question, as in *Long*, but a mixed question of law and fact.

In the context of a pretrial motion to suppress based upon a claim that reasonable suspicion to detain is lacking, such a mixed question of law and fact is subject to *de novo* review on appeal—at least once all questions of historical fact and credibility have been resolved in the light most favorable to the convicting court's ruling. *E.g.*, *Derichsweiler*, 348 S.W.3d at 913. But the same is not necessarily true when reviewing courts examine the legal sufficiency of the evidence to show reasonable suspicion (and therefore a lawful detention) for purposes of a prosecution for evading arrest.

In the context of legal sufficiency of the evidence following a jury trial, this Court's prior decisions have recognized that reviewing courts must afford some degree of latitude to jurors in applying the law to the facts. *See Vernon v. State,* 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) ("Words not specifically defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance. Accordingly, when determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant statutory words which are different or more restrictive than the jurors themselves were legally entitled to use.").

Here, "reasonable suspicion" was defined for the jury in the jury charge using non-technical terms. It is arguable that we owe greater deference to *a jury's* assessment of "reasonable suspicion" in a legal sufficiency context than we would owe to a convicting court *judge* in the context of its ruling on a motion to suppress. The kind of *de novo* appellate review of a trial judge's assessment of "reasonable suspicion" (once it has resolved all issues of credibility and historical fact) appropriate in a pretrial motion to suppress context may be inappropriate in appellate review of a jury's determination whether "reasonable suspicion" existed in deciding the elemental question: whether a detention was "lawful" in an evading arrest prosecution. The Court may need to explain why it is not paying greater deference to the jury's "reasonable suspicion" determination in this case.

I agree with Judge Parker—and Presiding Judge Schenck—that the court of appeals judgment should be affirmed. And I am disappointed in the Court for what seems to me to be its usurpation of the appropriate authority of a jury of our state's citizens in determining the Appellant's guilt for evading detention. For these reasons, and for the other reasons I have set out in this opinion as well, I respectfully dissent.

**FILED:**                                          December 19, 2025
**PUBLISH**