**Opinion filed December 1, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00233-CR

_____

## MICKEY RAY TAYLOR JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR56540**

## MEMORANDUM OPINION

The State indicted Appellant, Mickey Ray Taylor Jr., for two felony offenses involving aggravated assault with a deadly weapon. Count I alleged that Appellant committed aggravated assault with a deadly weapon against Oneita Poor, his then-fiancée, which caused her serious bodily injury, a first-degree felony offense. Count II alleged that, on the same date, Appellant committed aggravated assault with a deadly weapon against Dana Caldwell, his mother, a second-degree felony offense.

The jury found Appellant guilty of both offenses and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of fifteen years on Count I and a term of five years on Count II. This appeal followed.

Appellant raises two issues on appeal. First, Appellant contends that the evidence was insufficient to support the deadly weapon finding in Count II. Second, Appellant asserts that the trial court improperly assessed court-appointed attorney's fees against Appellant, an indigent individual. We modify and affirm.

*Background*

On the night of April 10, 2021, Appellant, Poor, and Caldwell were in Caldwell's home. Poor testified that Appellant's demeanor "had been a little off" that day. Caldwell testified that Appellant "was agitated" that night and that his agitation escalated when the alarm on her cell phone rang to prompt her to begin getting ready for work.

Caldwell testified that, when Caldwell's alarm rang, Appellant "flew across the room at [Caldwell]" with kitchen scissors, "wrapped his arm around" her, and put the scissors "right at [Caldwell's] throat," stating, "I can't believe it was my own mother" that "did it." Caldwell testified that Appellant, in this highly agitated state,[1] took her cell phone, "stabbed [the phone] three times on the front and flipped it over and stabbed it three times on the back, and then hurled it at [the] television as hard as he could." Caldwell testified that Appellant then held Poor and Caldwell in the home for approximately two hours. Appellant then threatened them and said that,

---

[1] There is no testimony in the record that accounts for Appellant's extreme behavior. However, on cross-examination, Caldwell testified that her "son likes recreational drugs. And whenever he takes drugs he is very paranoid"; however, she did not specifically state that he was on or taking drugs that day. During the punishment phase, Caldwell testified that it is "like a demon" and that Appellant is "good until he's on that drug. And he is vicious when he's on that drug."

"if they took him or killed him, he was going to take one or both of [them] with him when he went."

Caldwell testified that when Poor managed to escape the home and attempted to run away, Appellant jumped up and turned around. As he did so, he hit Caldwell with the scissors, which "stunned [her] for a minute." Appellant's acts against Caldwell left a puncture wound on her cheekbone and scratch marks from the scissors on her throat.

Poor testified that she attempted to escape by going down the front steps but that Appellant "tackled" her from behind. Appellant then stabbed Poor in her ear and on her back, face, and neck while on top of her. Appellant's acts against Poor resulted in numerous stab wounds and cuts that necessitated surgery and stitches. Poor also lost feeling behind her ear and on her hand as a result of Appellant's acts.

During Appellant's assault on Poor, Caldwell escaped the house, hid behind the cars in the driveway, and "crawled across the street to [her] neighbors' house" to ask one of the residents to call 9-1-1. Midland County Sheriff's Deputies Brantley Anderson and Steven Ramirez responded to the call to find Appellant "straddling" Poor with "the blade [of the scissors] pointed out of the back of his [right] hand" toward her. The deputies took Appellant into custody after numerous commands for him to drop the scissors.

*Discussion*

I. *Sufficient Evidence that the Scissors Were Used as a Deadly Weapon*

In his first issue, Appellant contends that the evidence at trial was insufficient to support the deadly weapon finding in the aggravated assault against Caldwell. Appellant asks that we reverse his conviction for Count II and remand the case to the trial court for a new trial.

3

*A.  Standard of Review*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288−89 (Tex. App.—Eastland 2010, pet. ref'd).  Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial.  *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight to afford such testimony.  *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899.  The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts.  *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778.  We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination.  *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Because the standard of review is the same, we treat direct and circumstantial evidence equally. *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor and can, without more, be sufficient to establish his guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13). A guilty verdict does not require that every fact must directly and independently prove a defendant's guilt. *Hooper*, 214 S.W.3d at 13. Instead, the cumulative force of all the incriminating circumstances may be sufficient to support the conviction. *Id.* Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).

The factfinder may consider a multitude of factors to determine whether the evidence presented sufficiently supports a finding that a particular weapon constitutes a deadly weapon. For example, a factfinder may consider the (1) proximity of the weapon to the victim; (2) nature of any wounds sustained; (3) words spoken by the defendant; (4) weapon's size and shape; (5) weapon's ability to cause serious bodily injury or death; (6) manner in which the defendant used the weapon; and (7) testimony that the victim feared serious bodily injury or death. *Babcock v. State*, 501 S.W.3d 651, 655 (Tex. App.—Eastland 2016, pet. ref'd); *Hopper v. State*, 483 S.W.3d 235, 239 (Tex. App.—Fort Worth 2016, pet. ref'd); *see also Brickley v. State*, 623 S.W.3d 68, 76 (Tex. App.—Austin 2021, pet. ref'd); *Leal v. State*, 527 S.W.3d 345, 348 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.); *Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

*B. Analysis*

In Count II, the indictment charged Appellant with aggravated assault, alleging that he intentionally, knowingly, and recklessly caused bodily injury to Caldwell by cutting or striking her about the head or body with a deadly weapon, to wit: scissors. The Texas Penal Code defines "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West 2021). The Penal Code's "plain language" does not require that the actor actually intend to cause death or serious bodily injury. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

As an initial matter, Appellant asserts that the evidence "must be evaluated at the time of the alleged assault against Caldwell," thereby urging that we restrict its review to Appellant's specific acts against Caldwell. In response, the State contends that, during our analysis, we can and should consider the manner in which Appellant used the scissors against Caldwell *and* Poor because the assaults against both women occurred in the same "criminal episode" or were at least "highly connected." As stated above, we are required to consider all the evidence admitted at trial. *See Winfrey*, 393 S.W.3d at 767; *Clayton*, 235 S.W.3d at 778.

We are also required to consider the facts of the case and the particular manner in which Appellant used or exhibited the scissors during the commission of the offense. *See* PENAL § 22.02(a)(2) (West Supp. 2022); *McCain*, 22 S.W.3d at 502; *Johnson v. State*, 509 S.W.3d 320, 324 (Tex. Crim. App. 2017). In *McCain*, the Court of Criminal Appeals delineated a two-part test to determine whether "the element of use or exhibition of a deadly weapon is satisfied." *Flores v. State*, 620 S.W.3d 154, 158 (Tex. Crim. App. 2021) (citing *McCain*, 22 S.W.3d at 502). Under *McCain*, we must first decide "whether the object 'could be a deadly weapon *under the facts of the case*'" based upon the defendant's "particular manner of use or

intended use of the object." *Id.* at 158−59 (quoting *McCain*, 22 S.W.3d at 502). Second, we must decide whether the deadly weapon was "used or exhibited . . . during the *criminal transaction* to facilitate commission of the crime." *Johnson*, 509 S.W.3d at 324 (emphasis added) (citing *McCain*, 22 S.W.3d at 503). Accordingly, we consider all the facts and circumstances surrounding the defendant's use or exhibition of the scissors during the criminal transaction. *Id.*; *see also Winfrey*, 393 S.W.3d at 767; *Clayton*, 235 S.W.3d at 778.

We next turn to the factors that the jury could have considered in this case during its determination. *See Babcock*, 501 S.W.3d at 655.

### 1. *Proximity of the Weapon to the Victim*

Caldwell and Poor testified that Appellant held the scisssors to Caldwell's neck during the commission of the assault while the women were held in Caldwell's home. Appellant hit Caldwell with the scissors, and the scissors left a puncture wound on Caldwell's cheekbone. Appellant left no distance between Caldwell and the scissors during the commission of the assault.

### 2. *Nature of Wounds Sustained*

According to the testimony and photographic evidence, Appellant caused the scissors to physically contact Caldwell's neck and head during the commission of the assault. The scissors left several scratch marks on Caldwell's neck from Appellant's use and exhibition of the scissors during his assaults. Appellant's use of the scissors also left an approximate one-half-inch-long puncture wound on the right side of Caldwell's face after Appellant struck her with the scissors. Based on Appellant's use or intended use of the scissors, the wounds Caldwell sustained on her neck and head demonstrate that the scissors were capable of causing serious bodily injury or death during the commission of the assault.

7

### 3. Words Spoken by Appellant

Caldwell testified that, after her cell phone alarm rang, Appellant put the scissors against her throat and stated, "I can't believe it was my own mother" that "did it." Caldwell testified that Appellant threatened her and Poor by stating that "if they took him or killed him, he was going to take one or both of [them] with him when he went." Appellant's words are consistent with the jury's finding that the scissors constituted a deadly weapon.

### 4. Size and Shape of Weapon

Investigator Anderson and Poor testified that the scissors were medium-sized "kitchen type" scissors. Poor testified that the scissors also had a "pointy" part on the handle of the scissors consistent with a bottle opener. According to the photographic evidence, the scissors were approximately eight inches long and consisted of a four-inch-long blade, a three-inch-long rubber grip, and a bottle opener at the end of the grip. The size and the shape of the scissors weigh in favor of the jury's finding that the scissors constituted a deadly weapon.

### 5. Weapon's Ability to Cause Serious Bodily Injury or Death

Appellant admits that "the scissors were used in such a manner as to constitute a 'deadly weapon' in his later assault against Oneita Poor." Accordingly, even if we were to accept Appellant's argument that we should isolate our evaluation of the evidence to only the time of the alleged assault against Caldwell, how these same scissors were used on the same night by the same assailant under the facts of the case,[2] including the assault upon Poor, is relevant to the issue of "[t]he weapon's ability to inflict serious bodily injury or death" upon Caldwell. *See Babcock*, 501 S.W.3d at 655 (factor number four). This is "more than a hypothetical capability of causing death or serious bodily injury." *Johnston v. State*, 115 S.W.3d 761, 764

---

[2]Or "criminal episode." *See* PENAL § 3.01(1)

(Tex. App.—Austin 2003), *aff'd*, 145 S.W.3d 215, 225 (Tex. Crim. App. 2004). Poor sustained extensive injuries that required surgery and stitches because of the manner in which Appellant used the scissors against her. Eliana Villegas, a registered nurse at Midland Memorial Hospital, confirmed that Poor's life was "absolutely" in danger from the injuries she sustained from Appellant's use of the scissors. The scissors Appellant used were capable of causing serious bodily injury or death, regardless of to whom his assault was directed.

### 6. *Manner in Which Appellant Used the Weapon*

As stated above, Appellant held the scissors to Caldwell's throat while threatening her and Poor. Appellant hit Caldwell in the head with one of the sharp ends of the scissors, creating a puncture wound on her cheekbone. Appellant additionally destroyed Caldwell's cell phone by stabbing it repeatedly with sufficient force to cause the cell phone to separate from its case. The manner in which Appellant used the scissors to threaten and injure Caldwell is consistent with the jury's finding that the scissors constituted a deadly weapon.

### 7. *Testimony that the Victim Feared Serious Bodily Injury or Death*

Caldwell testified that, during the incident, she thought, "I'm going to die. I thought all three of us were going to die that night. Because I didn't see any way of any of us getting out of that house alive." Poor additionally testified that she "just wanted to get out of there alive" and that she "didn't know if any of [them] were." The testimony specifying that Caldwell feared serious bodily injury or death supports the jury's deadly weapon finding.

Considering the totality of the above factors, the jury had sufficient evidence from which it could properly find that the scissors constituted a deadly weapon. Even in an isolated review of Appellant's acts against Caldwell, the record is clear that the scissors constituted a deadly weapon because (1) the scissors, in the manner

9

in which Appellant used or intended to use them, were capable of causing serious bodily injury or death, and (2) Appellant used and exhibited such scissors during the commission of his assault against Caldwell. *See* Penal §§ 1.07(a)(17)(B); 22.02(a)(2); *McCain*, 22 S.W.3d at 502.

Moreover, the trial court's charge included the lesser-included offense of assault causing bodily injury against Caldwell. The jury, however, found Appellant guilty of the greater offense of aggravated assault—an assault aggravated by Appellant's use or exhibition of the scissors, a deadly weapon, against her. Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence upon which a rational trier of fact could have found the essential elements of aggravated assault against Caldwell beyond a reasonable doubt.[3] *See McCain*, 22 S.W.3d at 503; *Johnson*, 509 S.W.3d at 324; *Dominique v. State*, 598 S.W.2d 285, 286 (Tex. Crim. App. [Panel Op.] 1980) (suture scissors held to victim's neck, threats, and slashing motions sufficient to sustain deadly weapon finding); *Green v. State*, 705 S.W.2d 403, 404 (Tex. App.—Fort Worth 1986, no pet.) (citing *Dominique*, 598 S.W.2d at 286) (scissors to victim's throat accompanied by threat sufficient). We overrule Appellant's first issue.

II. *Erroneous Inclusion of Attorney's Fees in the Costs Assessed Against Appellant*

In Appellant's second issue, he asserts that the trial court improperly assessed court-appointed attorney's fees against Appellant, an indigent individual. The State agrees. As a result, both parties request that we modify the judgment to delete the court-appointed attorney's fees assessed in this cause against Appellant.

---

[3]Appellant does not challenge the sufficiency of the evidence supporting the remaining elements of the aggravated assault against Caldwell.

*A.  Applicable Law*

We review an assessment of court costs to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost. *Smith v. State*, 631 S.W.3d 484, 500–01 (Tex. App.—Eastland 2021, no pet.) (citing *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014)).  An indigent defendant cannot be taxed the cost of his court-appointed attorney unless the trial court finds that the defendant has the financial resources to repay those costs in whole or in part. *Id.* at 501 (citing *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2022).  A defendant's financial resources and ability to pay are explicit elements that the trial court must consider in its determination of whether to order the reimbursement of such costs and fees. *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013). A defendant who has been determined by the trial court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial resources is found to have occurred. CRIM. PROC. art. 26.04(p); *Cates*, 402 S.W.3d at 251.

*B.  Analysis*

Here, trial counsel was appointed to represent Appellant throughout the proceedings because the trial court determined that Appellant was indigent.  In his motion to withdraw and have appellate counsel appointed, Appellant's court-appointed trial counsel explained that Appellant "does not have the funds to hire an attorney" and "will not have the funds to hire an attorney" for the appeal. Furthermore, on January 12, 2022, the district clerk certified that Appellant could not afford the cost of a transcript of the clerk's record and confirmed that it would be provided at no cost to him.

Because there is nothing in the record to indicate that (1) Appellant is no longer indigent or that (2) the trial court made a subsequent determination that Appellant's circumstances had materially changed or that he had the financial resources or ability to pay the court-appointed attorney's fees that were assessed against him, we hold that these costs were improperly assessed. *See Cates*, 402 S.W.3d at 252; *Smith*, 631 S.W.3d at 501. Accordingly, we modify the trial court's judgments to clarify that "all court costs, fines, fees, assessments and restitution" does not include court-appointed attorney's fees, and the district clerk's amended bill of costs to delete the court-appointed attorney's fees in the amount of $13,510 that were assessed against Appellant.

*This Court's Ruling*

As modified, we affirm the judgments of the trial court.

W. BRUCE WILLIAMS

JUSTICE

December 1, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.