# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00697-CR

---

**Michael Tucker, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-21-904045, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant[1] was convicted after a bench trial for the second-degree felony of indecency with a child by sexual contact, *see* Tex. Penal Code § 21.11(a)(1), (d), Count IV in the indictment, as well as other offenses involving the same child victim, including Count I for aggravated sexual assault. The trial court assessed punishment at 15 years in prison for Count IV and 25 years for Count I. In a sole appellate issue, Tucker maintains that the evidence was insufficient to support the elements of the offense for Count IV that Tucker "caused [the child victim] to touch appellant's sexual organ" and that Tucker "acted with the intent to arouse and gratify her own sexual desire." Separately, the State requests that we modify the judgment for Count I. We reject both sides' positions and affirm.

---

[1] Tucker's appellate brief says: "The appellant, Michael Tucker, is transgendered and thus will be referred to in the brief by feminine pronouns. During these proceedings she referred to herself as Jacqueline Michelle Tucker." We refer to Tucker using her chosen pronouns.

## BACKGROUND

Tucker used to manage a group home where several people or families would rent individual rooms. Tucker would collect the rent for the homeowner. Tucker's bedroom was upstairs in the home, and Leslie Cunningham once rented another upstairs room. She stayed there with her five-year-old daughter, A.R.

A.R. told her mother about concerning things that Tucker had done to the child, so Cunningham called the police. An investigation ensued, A.R. went through a forensic interview, and Tucker was twice interviewed by a detective. Daisy Sycks, another tenant in the group home, had a minor daughter who also made outcries against Tucker. Tucker was ultimately indicted for several sex offenses, variously involving A.R. and Sycks's daughter.[2] Count I against Tucker in this case was for aggravated sexual assault involving A.R., and Count IV was for indecency with A.R. by sexual contact. There were other counts involving A.R. that we need not mention here. After a bench trial, the court convicted Tucker of Count I and Count IV and entered separate written judgments on those two counts. Tucker now appeals, challenging only the judgment for Count IV.

## EVIDENCE SUFFICIENCY

Tucker argues in her sole appellate issue that the evidence was insufficient to support the elements of the offense that she "caused A.R. to touch appellant's sexual organ" and that she "acted with the intent to arouse and gratify her own sexual desire." The standards for evidence-sufficiency reviews after bench trials are generally the same as those for

---

[2] A separate appeal before this Court—cause number 03-22-00698-CR—concerns Tucker's conviction for offenses against Sycks's daughter.

evidence-sufficiency reviews after jury trials. *See Robinson v. State*, 466 S.W.3d 166, 172–73 (Tex. Crim. App. 2015). In a sufficiency review, we must consider all the evidence in the light most favorable to the State, which requires resolving any ambiguities in the evidence in the State's favor. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 634 S.W.3d 745, 748 (Tex. Crim. App. 2021); *Hernandez v. State*, 556 S.W.3d 308, 315 (Tex. Crim. App. 2017). And we must consider the combined and cumulative force of all admitted evidence and the reasonable inferences that can be drawn from any or all of the evidence. *See Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017).

We presume that the factfinder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the conviction. *See Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The factfinder is the sole judge of the weight and credibility of the evidence and could have believed some, all, or none of any given witness's testimony. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Schneider v. State*, 440 S.W.3d 839, 841 (Tex. App.—Austin 2013, pet. ref'd). We must defer to the factfinder on all these determinations. *See Zuniga*, 551 S.W.3d at 733; *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Schneider*, 440 S.W.3d at 841. The factfinder also "may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). If any rational factfinder could have drawn the inferences necessary to support proof of an element, then the State has carried its burden on that element. *See Brooks*, 634 S.W.3d at 748. As for those elements here, to have proven Tucker's offense of indecency with A.R. by sexual contact as alleged in the indictment, the State must have proven that Tucker

caused A.R. to touch Tucker's sexual organ and that Tucker did so with the intent to arouse or gratify Tucker's own sexual desire. *See* Tex. Penal Code § 21.11(a)(1), (c)(2).

First, the evidence supports the element that Tucker caused A.R. to touch Tucker's penis. In her interviews with detectives, Tucker admitted to an incident that involved Tucker's penis's going in A.R.'s mouth. Tucker described the incident during the later interview with the detective: Tucker had just masturbated in her bed; A.R. knocked on her mother's bedroom's door; Tucker woke up; A.R. went in Tucker's room, went to where Tucker was on her bed, and asked to get under the covers; Tucker let A.R. under the covers and felt something wet on her penis, which was A.R.'s mouth; and Tucker never told Cunningham that this had happened. Tucker's explanation for the incident was that the five-year-old child had "raped" her. But the trial court as factfinder was permitted to use its common sense to reject Tucker's explanation for why A.R.'s mouth had touched Tucker's sexual organ, *see Acosta*, 429 S.W.3d at 625, and could rationally infer instead that it had to have been the large adult, who was about 6′5″ or 6′6″ tall, who caused the young child to do what the child did. Plus, Tucker's admission that she did not tell the child's mother about what had happened supports a rational inference of consciousness of guilt, which is highly probative evidence of guilt, *see Ransom v. State*, 920 S.W.2d 288, 299 (Tex. Crim. App. 1994); *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.). There was other evidence of Tucker's consciousness of guilt: Tucker admitted lying to the detective during their first interview about the incident and in the later interview told the detective that Tucker would apologize to A.R. about the incident if they had the chance to speak again. The evidence thus supported the necessary inferences on the element of the offense that Tucker caused A.R. to touch Tucker's sexual organ.

As for the element of the intent to arouse or gratify Tucker's sexual desire, "the requisite specific intent . . . can be inferred from" the defendant's conduct and remarks and all the surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981). Relevant circumstances for inferring such an intent include other similar instances of the defendant's illegal sexual contact with children. *See Morgan v. State*, 692 S.W.2d 877, 881 (Tex. Crim. App. 1985).

The record here included, in addition to the evidence recounted above, plenty of evidence about similar instances of Tucker's illegal sexual contact with children and about a link between children and Tucker's arousing or gratifying her sexual desires:

- Tucker admitted to an instance involving a third person's perceiving that Tucker was masturbating to thoughts of children. At the time of the incident, A.R. had been in Tucker's room with her but then left. Then Tucker started masturbating. A neighbor saw Tucker doing it through a window and called out that Tucker was "a sicko or something," which Tucker believes was the neighbor's "perceiv[ing] that [Tucker] was jacking off to thoughts of" A.R.

- Tucker admitted that she "lusts for the body of children, especially female children," expressing that "children are born with bodies that [Tucker] wishes [s]he was born with." The detective interpreted the subtext of Tucker's statements as sexual. Tucker also described children's bodies, including when nude, as works of art.

- Tucker admitted that she herself is "not a safe person to watch children," at least in part because she is "a monster" for having touched the children inappropriately.

- Tucker admitted that there could have been times when she masturbated under her blanket while a child was in the room with her.

- Sycks's daughter reported that Tucker had inappropriately touched her, including once when Tucker pulled the child's pants down while in the bathroom and touched the child's vagina with Tucker's hand or finger.

- Tucker admitted to instances of touching Sycks's daughter. One such instance involved giving the child a "horsey ride" though the child was naked, and Tucker admitted both that the child's "vagina probably rubbed against [Tucker's] legs while that was happening" and that it was possible that Tucker's fingers or hand touched the child's vagina. In another instance, Tucker said that she saw Sycks's daughter belly-dancing while wearing an outfit like the one worn by the Jasmine character in the "Aladdin" movie. The child then, Tucker believes, "ran across the room, leapt on [Tucker], forcing h[er] body backwards and then hump[ed] [Tucker], with [the child's] pelvis slamming into [Tucker's] pelvis," and it took Tucker "about thirty seconds for [Tucker] to recover h[er]self and get the small child off of" Tucker's body. Tucker thought that the child's mother was prostituting the child to Tucker and maintained that the three-year-old held Tucker (who is 6′5″ or 6′6″ tall) down on the bed for about 30 seconds.

Because of all this evidence, the trial court rationally could have inferred the necessary specific intent, including because Tucker's explanations for prior sexual contact with children were implausible and because of the admissions about incidents that connect the arousal or gratification of Tucker's sexual desires with children. *See id.*; *McKenzie*, 617 S.W.2d at 216. We hold that the evidence was sufficient to support the elements of the offense of indecency with a child by contact that Tucker challenges and overrule her sole appellate issue.

### STATE'S REQUEST FOR MODIFIED JUDGMENT

The State requests that we modify the judgment for the Count I aggravated sexual assault to reflect that the "Statute for Offense" includes the subsection of the relevant statute that provides that the minimum term of imprisonment for Tucker's Count I offense is 25 years because the child victim was younger than six years old at the time the offense was committed. *See* Tex. Penal Code § 22.021(f) [hereinafter Subsection (f)]. The judgment for this count reflects the "Statute for Offense" as Penal Code section 22.021(a)(2)(B), which is a statutory subsection that defines the offense, and the State argues that omitting Subsection (f) from this section of the

judgment is a clerical error or misrecital requiring modification. The State says that omitting Subsection (f) from this section of the judgment is wrong because the judgment later reflects the trial court's relevant finding under Subsection (f), under a heading titled "Furthermore, the following special findings or orders apply:"—"that the victim or intended victim was younger than 6 years of age at the time of the offense." (Formatting altered.)

But what the State identifies is not an error. *Cf. Cazarez v. State*, 606 S.W.3d 549, 557–58 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (authority to modify judgments under Rule of Appellate Procedure 43.2(b) and *Bigley v. State*, 865 S.W.2d 26 (Tex. Crim. App. 1993), applies to "incorrect judgment[s]"). The judgment expressly includes the finding called for by Subsection (f), under the heading used for "special findings." The State has not cited, and we have not found, any authority for the proposition that a recital of a Subsection (f) finding on a later page of a judgment is ineffective if the "Statute for Offense" section earlier in the judgment does not also recite Subsection (f). The State does not argue that subsection (a)(2)(B) of the same statute was *not* a statutory provision that provides for the offense that Tucker committed as charged in Count I, and practice from our sister courts supports viewing Subsection (a)(2)(B) as an appropriate "Statute for Offense." *See, e.g.*, *JuarezAguilar v. State*, Nos. 05-22-00533-CR, 05-22-00534-CR, 2023 WL 5123303, at *8 (Tex. App.—Dallas Aug. 10, 2023, no pet. h.) (mem. op., not designated for publication). In a similar vein, the "Statute for Offense" should refer to statutory subsections that define the elements of the offense that the defendant committed, *see McDade v. State*, 613 S.W.3d 349, 358 (Tex. App.—Dallas 2020, no pet.), and any other statutory findings can be appropriately stated elsewhere in the relevant judgment, *see, e.g.*, *Jackson v. State*, No. 03-18-00417-CR, 2020 WL 2203306, at *4–5 (Tex. App.—Austin May 6, 2020, pet. ref'd) (mem. op., not designated for publication); *accord Pratommarath v. State*, No. 07-22-00084-CR,

7

2023 WL 3005034, at *4 (Tex. App.—Amarillo Apr. 19, 2023, pet. ref'd) (mem. op., not designated for publication) (relying on *Jackson*); *Taylor v. State*, No. 05-20-00017-CR, 2022 WL 17335689, at *14 (Tex. App.—Dallas Nov. 30, 2022, pet. ref'd) (mem. op., not designated for publication) (same). We thus deny the State's "Motion for Judgment Nunc Pro Tunc."

## CONCLUSION

We affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: October 5, 2023

Do Not Publish