**Opinion filed June 13, 2024**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00235-CR

_____

### SAMUEL SANCHEZ MORENO, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR56373**

## M E M O R A N D U M   O P I N I O N

The jury found Appellant, Samuel Sanchez Moreno, guilty of murder, a first-degree felony offense. *See* TEX. PENAL CODE ANN. § 19.02(b), (c) (West 2019). The jury assessed Appellant's punishment at confinement for a term of sixty years in the Institutional Division of the Texas Department of Criminal Justice. The jury additionally imposed a fine of $5,000. In a single issue, Appellant challenges the sufficiency of the evidence supporting the jury's guilty verdict. We affirm.

*Background Facts*

Detective Jennie Alonzo with the Midland Police Department responded to a call on November 9, 2020, between 6:30 p.m. and 7:00 p.m. Justin Zatovich[1] was found lying across the threshold of his residence, and there was a large amount of blood on the porch, the steps, and on the tile below the steps. Detective Alonzo testified that Zatovich had likely been deceased for more than twelve hours by the time she arrived. Detective Alonzo was able to observe that Zatovich had scratches on his face, "puncture wounds all over his body," bruising on his arms, and a gunshot wound.

Detective Alonzo testified that there were security cameras located at the front and back of Zatovich's residence. Based on her training and experience, Detective Alonzo knew that the cameras' video feeds would be uploaded to Zatovich's cell phone or to a "server." Officers were able to find and gain access to the camera system's server inside the home. Upon reviewing the video footage, officers were able to find video recordings of Zatovich's death.

Four different videos from Zatovich's security cameras were presented to the jury, and Detective Alonzo testified about what could be seen in each video. The time stamp on the videos show that Zatovich was murdered in the early morning hours of November 9, 2020.

In the first video, two men walk onto Zatovich's front porch. Detective Alonzo described the first man as wearing a "Bandidos soft cut" shirt, indicating that he is a member of the Bandidos motorcycle gang. Detective Alonzo described the second man as wearing a Bandidos "baseball cap but turned backwards." The man with the backwards baseball cap was also holding a firearm. The two men are then seen walking to the back of the residence.

---

[1]Officers were able to identify Zatovich after finding his identification card in the residence.

In the second video, Zatovich came out of the residence through the back door, and the man with the firearm struck Zatovich. A struggle ensued in the backyard, and Zatovich picked up a piece of wood from the ground and began swinging it. A third man walked up to the struggle and began "striking [Zatovich,] stabbing him with something." Zatovich was on his back while the third man was "on top of [him] subduing him while he's stabbing him." The third man had one elbow on the ground, and the first two men were "assisting" the third man as he stabbed Zatovich. Zatovich was shot outside of the camera's view.

A third video that better captured the man that stabbed Zatovich was also admitted into evidence. In a fourth video, the first and third man are seen returning to Zatovich's home to "wipe off fingerprints—well, wipe something off of the doors."

After Detective Alonzo watched the video footage of Zatovich's murder, she began working to identify the three men seen in the video. Detective Alonzo asked Midland Police Department's Gang Unit for help identifying the two men in Bandidos clothing. The gang unit identified the man seen wearing the Bandidos soft cut as John Sepulveda, known as the president of the Bandidos in Midland. The individual seen wearing the backwards Bandido cap and holding a firearm was identified as Brad Beck, a "hang-around" with motorcycle gangs.

Detective Alonzo began searching for the man who stabbed Zatovich by identifying the owner of the home that Zatovich lived in. The Midland County Appraisal District listed Appellant as the registered owner of the home. While nothing indicated that Appellant was a member of the Bandidos, Detective Alonzo learned that he and Sepulveda are related. Detective Alonzo compared photographs of Appellant with the video footage of the man that stabbed Zatovich and "thought they were a match." Appellant was arrested.

3

The police department photographed Appellant after his arrest. Sergeant Rosemary Sharp with the Midland Police Crimes Against Persons Unit testified that Appellant had "a couple of scratch marks" on his neck, cuts on both of his hands, an abrasion on his left arm that had started to scab over, and a "small injury" on his lower leg that looked like it was healing. These photographs were admitted into evidence alongside video screenshots of the man who stabbed Zatovich. Detective Alonzo testified that Appellant's hairstyle, hairline, ear, facial hair, "even the way he wears his sleeves are similar" to the man that stabbed Zatovich. Detective Alonzo noted that both Appellant and the man seen in the video had a "mullet" hairstyle.

Detective Alonzo interviewed Appellant after his arrest. Detective Alonzo asked about Appellant's family; Appellant did not mention that Sepulveda was a cousin who lived in Midland. Detective Alonzo testified that Zatovich had been trying to purchase the home he was living in "as a rent-to-own property" from Appellant's mother before she died in 2019, but the contract to sell the property to Zatovich was never signed. Appellant told Detective Alonzo that he did not want Zatovich living at the property but could not afford an attorney to evict him. Appellant had refused to pay taxes on the property in 2019. Detective Alonzo also testified that Appellant was unable to "pinpoint" in his interview the last time he saw Zatovich—while Appellant first said he had last seen Zatovich twenty years ago, he later said he had seen Zatovich "a couple years" before his mother's death.

Dr. Tasha Greenberg, the deputy chief medical examiner for the Tarrant County Medical Examiner's Office, testified that Zatovich had four gunshot wounds and "superficial, penetrating injuries, or sharp force injuries." Dr. Greenberg stated that Zatovich's cause of death was "the gunshot wounds. In particular, the gunshot wound on the right side of the chest, the [sic] injuring the lung and the liver." Dr. Greenberg confirmed that the sharp force injuries did not penetrate into Zatovich's vital organs. When Appellant's trial counsel asked Dr. Greenberg if the

4

sharp force injuries were a cause of Zatovich's death, Dr. Greenberg responded that they were not an "immediate[]" cause of death due to his gunshot wounds, one of which was fatal. However, Dr. Greenberg noted that the sharp force injuries "could lead to bleeding. And when you have enough bleeding in aggregate, that certainly can either cause or contribute to death in certain cases."

Benny Benavides, Appellant's friend, testified in his defense. When asked if Appellant was easily angered, Benavides testified that "you can't get [Appellant] mad." Benavides testified that Appellant would have been physically unable to stab Zatovich as the man in the video was seen doing because Appellant had "bad knees" and "wouldn't have got back up." Benavides testified that the man seen stabbing Zatovich in the video was not Appellant and that he did not see the physical similarities between Appellant and the man in the video that Detective Alonzo pointed out during her testimony.

Neither the firearm used to shoot Zatovich nor the instrument used to stab him were recovered. A stain on Zatovich's shirt was tested for touch DNA, but Appellant, Beck, and Sepulveda were all excluded as contributors.

*Analysis*

In Appellant's sole issue, he contends that the evidence at trial was insufficient to support the jury's guilty verdict for murder because "there was plainly reasonable doubt inherent in the investigation as well as at trial, especially considering the codefendant, who the State believed to be the actual shooter, did not testify at Appellant's trial." We note at the outset that the State made no allegation in either its opening or closing statement during the guilt/innocence phase of trial about who it believed shot Zatovich, and instead noted that the jury did not have to be unanimous in who they determined the shooter was.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the

5

standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the

evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

To determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.* When, as here, the trial court's charge authorized the jury to convict the defendant on more than one theory, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the charge. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992)).

The indictment charged Appellant with Zatovich's murder under two theories: (1) by intentionally or knowingly causing Zatovich's death by stabbing him with an unknown object or by shooting him with a firearm; and (2) with the intent to cause serious bodily injury to Zatovich, committing an act clearly dangerous to human life by stabbing Zatovich with an unknown object or by shooting him with a firearm, causing his death. *See* PENAL § 19.02(b)(1), (2). These two methods of committing murder are not separate offenses but, rather, are alternative methods of committing the same offense. *See Walter v. State*, 581 S.W.3d 957, 968 (Tex. App.—Eastland 2019, pet. ref'd).

7

Here, the trial court's charge allowed Appellant to be convicted either as a primary actor or as a party to Brad Beck or John Sepulveda. Appellant asserts that the trial court's charge "unnecessarily broaden[ed] the possible basis for a conviction" because the indictment charging Appellant with murder did not charge Appellant under the law of parties. Appellant's contention is incorrect. Generally, the trial court may instruct the jury on the law of parties if "there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999); *see Walter*, 581 S.W.3d at 975. "Regardless of whether it is pled in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence." *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013); *see Walter*, 581 S.W.3d at 975.

Under Section 7.01 of the Penal Code, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *See* PENAL § 7.01(a) (West 2021); *see Adames v. State*, 353 S.W.3d 854, 862 (Tex. Crim. App. 2011). The trial court's charge permitted the jury to find that Appellant was criminally responsible for the conduct of Beck or Sepulveda under Section 7.02(a)(2). *See* PENAL § 7.02(a)(2) (West Supp. 2023). This statute provides that "[a] person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.*; *see Adames*, 353 S.W.3d at 862. "Each party to an offense may be charged with commission of the offense." *See* PENAL § 7.01(b). Accordingly, the trial court's charge did not unnecessarily broaden the possible basis for a conviction, and the jury could have found Appellant guilty as either a primary actor or a party to Zatovich's murder. *See* PENAL §§ 7.01(a), 7.02(a)(2).

Appellant directs his sufficiency challenge to multiple aspects of the evidence in this case. Specifically, Appellant asserts that "[n]o identification of Appellant as being present at the time of the offense was made by any person," the firearm used to shoot Zatovich was never located, there was no evidence that Appellant possessed a firearm, there was no evidence that Appellant had any connection to his two codefendants, and there was no DNA evidence connecting Appellant to the crime.

When conducting an evidentiary review, "[w]e do not review the sufficiency of the police investigation; we review the evidence presented at trial." *Quinonez v. State*, No. 06-07-00016-CR, 2007 WL 2608833, at *4 (Tex. App.—Texarkana Sept. 12, 2007, pet. ref'd) (mem. op., not designated for publication); *see Espinoza v. State*, No. 11-19-00232-CR, 2022 WL 3903774, at *5 (Tex. App.—Eastland Aug. 31, 2022, pet. ref'd) (mem. op., not designated for publication). "[W]e do not consider what evidence the State could have or even should have presented." *Quinonez*, 2007 WL 2608833 at *4. We also do not speculate about the evidence that the State did not present. *McLemore v. State*, No. 05-15-00160-CR, 2015 WL 9591398, at *3 (Tex. App.—Dallas Dec. 31, 2015, no pet.) (mem. op., not designated for publication) (citing *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012)); *see Espinoza*, 2022 WL 3903774 at *5. Further, we do not usurp the role of the factfinder by factoring into our sufficiency analysis an alternative hypothesis inconsistent with the guilt of the accused. *Jenkins v. State*, 493 S.W.3d 583, 601 (Tex. Crim. App. 2016).

There is ample evidence that supports Appellant's conviction. Appellant admitted in an interview that he had an ongoing property dispute with Zatovich. Detective Alonzo testified that she compared photographs of Appellant to the video and determined that Appellant was the man that stabbed Zatovich. Accordingly, Appellant's contention that no one identified Appellant as being present at the time of the offense is incorrect. Detective Alonzo also testified that Appellant and

Sepulveda were related to one another. Thus, Appellant's contention that there was no evidence that Appellant had any connection to his two codefendants is also incorrect. Finally, the jury viewed the same videos and the same photographs of Appellant as Detective Alonzo and could have reasonably reached the same conclusion that Appellant was the man depicted in the video. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778.

Appellant also asserts that (1) there was no evidence that Appellant acted as a party with his codefendants, and (2) even if he was present at Zatovich's murder, his codefendants' membership in a "violent gang" and possession of a firearm combined with "Appellant's physical handicaps" indicate that his presence may not have been voluntary. However, video footage showing the third man's active participation in the murder of Zatovich by repeatedly stabbing him while his codefendant holds him down would allow the jury to reasonably conclude that Appellant was voluntarily participating in Zatovich's murder—even if Appellant was not seen holding a firearm or shooting Zatovich himself. Accordingly, the jury could have reasonably concluded that Appellant acted with the intent to promote or assist the murder of Zatovich by soliciting, encouraging, directing, aiding, or attempting to aid the shooter in committing the murder. *See* PENAL § 7.02(a)(2); *Adames*, 353 S.W.3d at 862.

Reviewing courts are required to consider the combined force of all of the evidence. *Merritt*, 368 S.W.3d at 526 (citing *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011)). "We may not re-weigh the evidence or substitute our judgment for that of the factfinder." *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018) (citing *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)). Viewed in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed the murder of Zatovich as either a

primary actor or as a party.  *See Jackson,* 443 U.S. at 319.  We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


June 13, 2024

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.