# Court of Appeals
## Tenth Appellate District of Texas

---
10-24-00272-CR
---

Tayran Rashid Johnson,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
443rd District Court of Ellis County, Texas
Senior Judge David Evans, presiding
Trial Court Cause No. 48321CR

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury found Appellant, Tayran Rashid Johnson, guilty of second-degree felony sexual assault. The jury assessed Johnson's punishment at nine years confinement in the Correctional Institutions Division of the Texas Department of Criminal Justice. The trial court sentenced him accordingly. This appeal ensued. We affirm.

## A. Background

On May 16, 2021, Diana went to her cousin Candice Jackson's home for a casual get-together with friends and family.[1] Diana brought her nearly two-year-old daughter with her to the event. Johnson attended the party because his uncle was dating Candice Jackson. Diana testified at trial that she met Johnson for the first time at a prior get-together, also held at Jackson's home. Diana stated that the first night they met, Johnson told Diana he liked her, wanted her, and did not want anyone else to have her. Diana rebuffed him. Diana then testified that, from the first time she met Johnson until the get-together in May 2021, Johnson aired his romantic interest in Diana on a continuous basis. She rebuffed him each time.

Diana testified that, upon her arrival at the get-together in May 2021, she and others began drinking inside the house. Eventually, Diana and some family and friends migrated to the porch outside to toast Diana's deceased uncle. Diana stated that, after the toast, she was upset about her uncle and stayed behind on the porch while everyone except Johnson went inside. Diana testified that she and Johnson sat quietly outside for about five minutes, until she and Johnson went inside the house and rejoined the others, who were drinking and playing card games. Diana continued to drink until she and a

---

[1] We continue to use the pseudonym "Diana" in place of the victim's name consistent with its use in the underlying proceedings.

couple of other people in attendance got hungry and wanted to get something to eat. Diana testified that she put her daughter to bed before leaving with the other people around 1 or 2 a.m. When they returned to the house, Diana stated that she heard Johnson arguing with his uncle. Diana testified that she could only hear Johnson's uncle telling Johnson to leave Diana alone. Diana attempted to diffuse the situation by telling Johnson that another woman was interested in him. Johnson replied that he didn't want the other woman; he wanted Diana. Diana testified that she again rebuffed Johnson.

Diana testified that she and the others at the house continued drinking and playing games. At some point, Diana decided to stay the night at the house. Diana testified that, knowing she was staying the night, she continued drinking. Eventually, she fell out of her chair and realized she needed to lie down.

Diana went to the room where her young daughter was sleeping, climbed into bed, cuddled with her daughter under the covers, and fell asleep. Diana stated that the next thing she remembered was waking up to Johnson on top of her with his penis inside her vagina. Diana stated that she knew it was Johnson because she recognized his voice as he told her he wanted to marry her. Diana testified that she told him to stop, to get off her. Johnson did not stop. She then tried to push him off. She testified that Johnson responded by trying to kiss her on the lips and neck. Diana again tried to push Johnson off

her. Diana indicated Johnson responded by "going harder and faster." Diana stated that she did as much as she could to get Johnson to stop, but she was still feeling very intoxicated. She testified that she couldn't recall how it ended. The next thing she remembered was waking up the following morning with her pants off and Johnson in bed with her and her daughter.

Diana testified that, in the morning, Johnson left the room first. Diana and her daughter left soon after. Diana drove directly to her mother's house, where Diana called Jackson and told her about the assault. Diana stated that, after the phone call, she also told her mother about the assault. She testified that, after telling her mother, she went to the local hospital, where she also told the nurses and doctors about the assault. Diana called her daughter's father, who drove her to a different hospital for a sexual assault nurse examination (SANE). There, Diana reported the sexual assault to law enforcement.

## B. Standard of Review

In his sole issue, Johnson argues that the evidence presented at trial was insufficient to support the jury's finding of sexual assault. The Court of Criminal Appeals has defined our standard of review for evidence sufficiency as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d

654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

## C. Authority

Here, the indictment alleged that Johnson intentionally or knowingly committed the second-degree felony offense of sexual assault. A person commits the offense of sexual assault if, knowingly or intentionally, the person causes the penetration of a sexual organ of another person by any means, without that person's consent. TEX. PENAL CODE ANN. § 22.011(a)(1)(A). A sexual assault is without the consent of the other person if the actor compels the other person to submit or participate by the use of physical force, violence, or coercion; if the other person has not consented and the actor knows the other person is unconscious or physically unable to resist; or if the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring. TEX. PENAL CODE ANN. § 22.011(b)(1), (3), (5). A sexual assault conviction is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within one year after the date on which the offense is alleged to have occurred. TEX. CODE CRIM. PROC. art. 38.07.

D. Analysis

Johnson contends that the evidence of Diana's lack of consent is insufficient to support a rational jury finding him guilty of sexual assault.

The record shows that Diana informed her cousin, her mother, her daughter's father, nurses, doctors, and the police of the sexual assault the morning after it occurred. Because Diana told a person other than Johnson of the offense within a year of the sexual assault, Diana's uncorroborated testimony alone is sufficient to support the conviction for sexual assault. TEX. CODE CRIM. PROC. art. 38.07.

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). It is the sole province of the jury to determine the credibility of the witnesses and to resolve conflicts in the evidence. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). Diana's testimony alone encompassed every element of the offense, and the jury was free to rely on her account. Doing so is a question of witness credibility, not sufficiency.

Diana testified that she went to bed heavily intoxicated and awoke to Johnson on top of her with his penis inside her vagina. *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(A). She testified that she expressly told Johnson to stop and tried to push him off her, but "he just kept going harder and faster." Diana

further testified that Johnson kept having sex with her while she tried to push him away, and that he kept telling her that he wanted to marry her. Based on Diana's testimony alone, a rational jury could determine that Johnson's actions fall under any of the three independent definitions of nonconsensual sex on which they were instructed. *See* TEX. PENAL CODE ANN. § 22.011(b)(1), (3), (5).

A rational jury could have found that Johnson intentionally or knowingly caused the penetration of Diana's sexual organ by means of his own sexual organ, without Diana's consent. Considering the foregoing evidence viewed in light most favorable to the verdict, we conclude that the evidence supports the jury's finding that Johnson committed the felony offense of sexual assault. Accordingly, we overrule Johnson's sole issue.

## E. Conclusion

Having overruled Johnson's sole issue, we affirm the trial court's judgment.

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: February 5, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirm
Do Not Publish
CR25